# HAFETZ NECHELES & ROCCO
ATTORNEYS AT LAW

500 FIFTH AVENUE
NEW YORK, N.Y. 10110

TELEPHONE: (212) 997-7595
TELECOPIER: (212) 997-7646
E-MAIL: INFO@HNRLAWOFFICES.COM

BY EMAIL AND ECF

Carolyn Pokorny
Roger Burlingame
Todd Kaminsky
United States Attorney's Office
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

    Re:    United States v. Pedro Espada, Jr.
              Crim. No. 10-985 (FB)

Dear Counsel,

    I write this letter on behalf of Russ Gioella and myself to address a number of outstanding issues, including some critical discovery concerns. I would like to schedule a telephone conference to try to resolve these issues.

**A. Electronic Discovery**

    Our most immediate and pressing concern is our continued problems with the electronic discovery, and our concern that even at this late date, we cannot tell whether you have produced to us all Rule 16 materials, and whether we have been able to access the data that you produced to us.

    I have discussed with Mr. Kaminsky on a number of occasions my concern that we either have not received all of the discovery in this case, or that my law firm has been unable to access all the data in the electronic materials that the government provided to us, and may not even be aware that there is data that we have not accessed. Because of this I repeatedly asked for a list of files that were copied from the servers, so that we could compare what the government took from Soundview with what we have in our possession. We finally received such a list on Tuesday, August 23, 2011.

Based on this list, it appears highly likely that certain electronic data that was seized by the government from Soundview on April 21, 2010 has never been produced to us. We ask that you either identify to us where this material is in the hard drive that you produced or produce the material immediately.

*1. The Electronic Discovery We Appear To Be Missing*

In order to explain why we believe we are missing certain electronic discovery, I set forth the history of discovery production in this case.

On February 1, 2011 the government began producing to the defendants the electronic discovery the government seized in its search of Soundview on April 21, 2010. In a letter dated February 1, 2011 Mr. Kaminsky stated that he had provided to us two hard drives which contained all of the electronic data that the FBI had extracted from computers at Soundview. However, his letter did not contain an inventory of what electronic data had been copied from Soundview and was purportedly being provided to us.

Because the files were produced in a format that apparently is exclusively used by the government, we had difficulty accessing them. We finally were able to access some, but not all of the files. However, we did not realize that there were files that we had not accessed.

Moreover, when we began to extract files we saw that many of the file folders had the same name, but contained different documents. For example, there were two folders named "ibauer," but the contents of these two folders were different. Based on this information, and the fact that one of the files was under a sub-file named "public," we believed that one of the folders contained files taken from the server while the other contained files from an imaged computer. We therefore concluded, apparently incorrectly, that we had indeed obtained all of the electronic discovery, as Mr. Kaminsky represented.

On July 20, 2011 we received a set of "hot documents" from the government. We realized that there were some documents in this binder which we had never seen and which we could not find in the electronic discovery. We began to ask for an explanation, and for a list of exactly what files the government copied from the Soundview server and a list of computers that were copied, so that we could verify whether we received all of the discovery.

On August 17th, Mr. Kaminsky and Ms. Kavanagh arranged for us to speak with Agent Dan Schleyer and Agent Bart Donohue, who explained to us that there were files included in the computer data that had been produced to us which had not been extracted properly, and which we therefore did not know existed. With Agent Donohue's assistance we discovered 86 gigabytes of new data which we did not previously know existed.

However, even after reviewing this new data, we still believed that there are more files that we did not receive or cannot access. Accordingly, we continued to press for a list of files

HAFETZ NECHELES & ROCCO

that were copied. On August 23rd we finally received a list of computers and server files which had been copied (although, as we explain below, we still did not receive a list of the file names that corresponded with the devices copied). We then realized that it appears that what we believed to be copies of Espada's secretary's computer are actually copies of her files on the server. The same is true with respect to the two hard drives seized from Soundview's Controller's office. Accordingly, we still believe that we still have not received some of the electronic data which the government seized from Soundview.

Specifically, please either immediately provide to us the following files or tell us where in the discovery they are located: (1) the image of the entire hard drive of the computer found in Pedro Espada Jr.'s office suite (belonging to his secretary), (2) the image of the two hard drives from Soundview's Controller's office, (3) the seven memory cards you copied from Gautier's office (we appear to have received only five of them), and (4) the eight CDs seized from the storage shed (we appear to have received only five).

*2. A List Of The Names Of The Files*

Additionally, in order for us to be sure that we have received everything that you copied at Soundview, we need a list of the names of the files that corresponds with each device that was copied. Specifically, our understanding is that each device that was copied was put by the FBI into its own file and given its own mega-file name. For example, the image of the server has the mega-file name "1000232189_1_19A_NY_304437.E01". Once you open that file, there are sub-files, with other file names. We need the list of devices copied and the mega-file name assigned to each device so that we can see whether we have that mega-file on the hard drives that you provided to us.

For example, we have two files named "ibauer" but we now believe that those both came from the server. However, previously we believed that we had a copy of her personal computer, as well as her files that were stored on the computer. In order to clear up this confusion and ensure that we have all of the discovery we need a list of the file names that correspond to the devices that were copied.

*3. List of All Documents That The Taint Team Did Not Produce To The Investigative/Trial Team*

We have also requested but not yet received a list of all documents that the taint team did *not* produce to the investigative/trial team. We believe we are entitled to this and ask that this also be produced immediately.

**B. McGladrey Documents**

We are also concerned about the situation with the McGladrey documents. For the last several months we have been asking for a list of the bates stamps of the McGladrey documents

HAFETZ NECHELES & ROCCO

that were produced to the government for several months. Last week we were told that the government had finally reviewed the bates stamped numbers and realized that they had neglected to produce to us 500 pages of documents, and that the government had not received from McGladrey about 1000 pages of discovery.

On August 23rd, we received approximately 7000 pages of McGladrey documents which the government apparently did not turn over to us previously. In addition, there are apparently still approximately 1000 pages of McGladery documents that we understand we are still owed.

Please confirm to us that this is the universe of McGladery documents and tell us when we will be receiving the rest of these documents.

### C. Other Rule 16 Discovery

Given the confusion that exists with the other discovery, we want to confirm that the government has not received any discovery from any of the following vendors listed in the Indictment. We previously requested discovery obtained by the government from these vendors but have not received anything from the government other than the American Express records or records seized from Soundview:

i. Lum Yen Resturaunt
ii. Toyo Sushi
iii. Mamaroneck Diner
iv. Nautilus Diner
v. Legal Sea Foods
vi. Seasons Japanese Cuisine
vii. Edible Arrangements
viii. Merv Blank Inc.
ix. Ed Wolf Esq./Wolf and Wolf
x. Genova Burns & Vernoia
xi. Caroline Buckler
xii. Bentley of Long Island
xiii. Profusion Management
xiv. Andrew Bronen
xv. Bronx Imaging/Precision Ultrasound
xvi. Code One
xvii. Crystal Jordan
xviii. Henry Schwartz
xix. Dinesh Pharmacy

HAFETZ NECHELES & ROCCO

Additionally, we received bids from Capital Contractors and Safety Building Cleaning Company, but we have not received any other records, work papers, correspondence, notes, or anything else from these companies. This particularly concerns us because at least one witness from one of these companies told us that he produced his handwritten notes on a bid form to the government but we did not receive these documents.

Finally, we are also concerned that we may not have received full productions of documents from the following vendors and we ask that you confirm that the bates stamp numbers below reflect the complete production:
  i. PIP Printing (DC1754-1820)
  ii. Bronx Equestrian (DC 1821)
  iii. Huntington Learning Center (DC1858-1865)
  iv. Bruni & Campisi (DC2442-2451)
  v. Donald MacLaren (DC2452-2482 and two CDs)
  vi. Evesha Films & Audio (DC2483-2490)

### D. Charts, Trial Exhibits and 3500 Materials

The government and the defense agreed early on in this case that in lieu of a bill of particulars, the government would provide the defense with (1) a list of the items that the government intends to prove at trial were stolen, or that the defendants conspired to steal, from Soundview, (2) a chart containing all of the tax charges, and (3) early production of trial exhibits and 3500 materials.

With respect to the list of items that the government intends to prove were stolen, we previously were told that the charts that the government introduced in evidence in the Grand Jury was a partial list. In the last few weeks we have been told by Mr. Kaminsky and Ms. Kavanagh that that list might be inaccurate, and items may be changed. We were told that we would be receiving a fairly final list by the end of this week.

Obviously this is of critical importance in our trial planning. We are relying on the charts that you gave us and it is difficult for us to prepare for trial if the items we allegedly stole change. Accordingly, if you do not intend to provide us with the updated list by tomorrow we ask that you inform us of the date by which we will be receiving this list.

With respect to the chart containing the tax charges we understand there are no changes to that chart and that they accurately reflect what the government intends to prove at trial with respect to the tax charges.

Finally, with respect to the early production of trial exhibits and 3500 materials, we were previously promised that you would produce the trial exhibits right after Labor Day and the 3500 material by the end of September. We assume that this is still your schedule.

HAFETZ NECHELES & ROCCO

### E. Jury Questionnaire

In our last conversation we agreed that Mr. Kaminsky would draft a jury questionnaire and circulate it to us, for our comments. When will we be receiving this?

### Conclusion

I suggest that we have a conference call to attempt to resolve as many of these issues as possible. Obviously it is in all of our interest to figure out as quickly as possible whether there is indeed a problem with discovery not being provided to us, or whether this is just a result of confusion. I am available all day tomorrow, and Monday morning as well.

Very truly yours,

/s/

Susan R. Necheles