

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

271 Cadman Plaza East

Brooklyn, New York  11201

February 15, 2012

Hon. Frederic Block
United States District Court
Brooklyn Federal Courthouse
225 Cadman Plaza, East
Brooklyn, New York 11201

        Re:  United States v. Espada et al.
             Cr. No. 10-985 (FB)

Dear Judge Block:

      The government submits this supplemental letter in further support of our motion in limine dated February 6, 2012.[1]

      We write to provide further authority for one of our in limine points, to wit: our motion to preclude at trial, any arguments about, references to or evidence of claims that Espada's transfer of his janitorial company, CEDC, to Soundview somehow was invalid. (See Gov't Feb. 6, 2012 Let. at 10-12). To summarize, we anticipate that the defendants will claim that Espada's transfer of CEDC to Soundview was invalid; that because the transfer was invalid, CEDC never became a subsidiary of Soundview; and therefore when the defendants siphoned funds from CEDC, they were not embezzling Soundview's funds.  We now provide two additional reasons why the defendants may not contest the validity of Espada's transfer of CEDC to Soundview at trial: (1) both Espada and Soundview ratified the agreement to transfer CEDC to Soundview; and (2) impossibility is not a defense to the conspiracy charges.

1.   Ratification

      Because Espada and Soundview ratified the transfer of CEDC to Soundview, Espada cannot now legally claim that his agreement to transfer CEDC was invalid.  To invite the jury to question the validity of the transfer would usurp the Court's role as the ultimate decider of law, and would lead to jury confusion.

---

[1]  We note that the defense has not filed any opposition papers, which were due on Monday, February 13, 2012, according to the Court's motion schedule.  Accordingly, our motion appears to be unopposed and should be granted in its entirety.

> "Ratification can . . . occur through 'intentionally accepting benefits under the contract, by remaining silent or acquiescing in the contract for a period of time after he has the opportunity to avoid it, or by acting upon it, performing under it, or affirmatively acknowledging it.'" In re Toscano, 799 F.Supp.2d 230, 243 (E.D.N.Y. 2011)(ADS)(citing VKK Corp. v. Nat'l Football League, 244 F.3d 114, 123 (2d Cir. 2001) and In re MarketXT Holdings Corp., 361 B.R. 369, 402 (Bankr. S.D.N.Y. 2007)).

Here, both Espada and Soundview repeatedly recognized that Espada had transferred CEDC to Soundview over the course of several years, including: (1) statements by Espada and Soundview Board members as reflected in multiple Soundview Board minutes; (2) declarations in Soundview's, CEDC's and Espada's tax returns; and (3) written, signed submissions to government agencies. Moreover, Soundview only awarded the 2005 janitorial contract to CEDC after Espada and the Board announced the transfer of CEDC to Soundview. These and other acts amounted to ratification, and the defendants cannot now claim that Espada's transfer of CEDC to Soundview was invalid.

The case of United States v. Cartwright, 632 F.2d 1290 (5th Cir. 1980) in instructive. There, the Court rebuffed a defendant's efforts to raise a claim much like the one we anticipate that the defendants wish to make here. The defendant Cartwright challenged his conviction for defrauding a federally insured savings and loan ("S&L"). The defense tried to argue that the subsidiary never became wholly-owned by the S&L because the S&L's purchase of subsidiary was never approved by the state savings and loan commissioner. Id. The Fifth Circuit rejected that argument, stating:

> "[E]ven if this transaction would be considered void under Texas law, questions concerning the existence of a parent-subsidiary relationship are, for purposes of enforcing the federal statutes here in issue, matters of federal law. **We have no trouble concluding that, since Sinton Service [the subsidiary] conducted business for a full year as a wholly-owned subsidiary of Sinton Savings Association [the S&L], a parent-subsidiary relationship existed between the two, and that Cartwright's frauds on Sinton Service Corporation [the subsidiary] were thus within the scope of the federal statutes under which he was charged**.

Id. at 1293.

Here, too, Soundview and CEDC conducted business as a parent-subsidiary for an even longer period of time than the one-year time frame in Cartwright. Further, both Soundview and Espada repeatedly and publicly declared that the parent-subsidiary relationship existed. Therefore the Espadas cannot now claim, more than six year later, that CEDC never became a subsidiary of Soundview. Such arguments would (i) mislead and confuse the jury and therefore should be precluded under Rule 403 of the Federal Rule of Evidence, and (ii) impermissibly place a legal finding — as opposed to a factual finding — in the hands of the jury

Similarly, in United States v. Blackburn, 9 F.3d 353, 357 (5th Cir. 1993), the Fifth Circuit rejected another defendant's efforts to undermine his fraud conviction based on after-the-fact attacks on a contract's validity. In Blackburn, the defendant and his business partner took out a bank loan to build a speculative home. As part of the loan package, the bank required the defendant and his partner to pledge a CD. Both the defendant and his partner wrote checks for deposit into the CD account and both signed the pledge. A week after the loan closing, Blackburn reviewed the loan documents and noticed that his partner mistakenly had signed the pledge in the name of a company that the defendant and his family owned, even though the partner was not authorized to act on behalf of that company. Blackburn told his partner that because of this defect, the bank had erred in accepting the pledge, and if the loan ever went into default, he could sue the bank and get the pledge money back. Blackburn then made every draw against the loan, and defaulted on the loan. Thereafter, Blackburn tried to transfer the CD to another bank on the pretense that it was for a friend.

The Fifth Circuit gave short shrift to Blackburn's contention that the government did not meet its burden because it did not prove that he had actually pledged the CD. Id. at 257. In language particularly relevant here, the Court noted that "although the government alleged that Blackburn physically pledged the CD, it was not required to prove that a legally binding pledge existed." Id. The Court emphasized that "the government proved that Blackburn knew that the CD was supposed to have been pledged and that he pretended it was pledged so he would have the benefit of the loan."

Here, at the very least, Espada knew that CEDC was supposed to have transferred and he acted as if it had been - in board minutes, in his tax returns and in statements to government agencies. Thus, the government is "not required to prove that a legally binding pledge [to transfer CEDC] existed." Id.

3

For these reasons, any argument to the jury that the transaction did not take place is not relevant to a question of fact that will properly be before the jury, but only to a legal question for the Court. As such, the defendants should be precluded from pursuing this defense under Rule 403 as its only purpose will be to sew jury confusion.

2. <u>Impossibility is Not a Defense to Conspiracy Charges</u>

The anticipated defense fails for a second reason: impossibility is not a defense to conspiracy charges, such as conspiracy to embezzle federal funds in violation of 18 U.S.C. §§ 371 and 666(a)(1)(A) (Count One), wire fraud conspiracy, in violation of 18 U.S.C. § 1349 (Count Seven), and conspiracy to defraud the United States in violation of 18 U.S.C. § 371 (Count Ten). The expected defense is nothing more than an allegation of impossibility: that because Espada's agreement to transfer CEDC to Soundview was somehow invalid, CEDC never became a subsidiary of Soundview, making it impossible for the defendants' siphoning of CEDC funds to amount to an embezzlement of Soundview's funds. Because this is not a permissible defense to conspiracy charges, the defendants should not be permitted to pursue it. Permitting such argument would again usurp the Court's role as the decider of legal questions and cause significant jury confusion.

To establish the existence of a conspiracy, the government need only establish the existence of an agreement and an overt act in furtherance of the agreement. <u>United States v. Giordano</u>, 693 F.2d 245, 249 (2d Cir. 1982). Because it is the conspiratorial plan itself that is the focus of the charge, the illegality of the agreement is not dependent on the actual achievement of its goal. <u>Giordano</u>, 693 F.2d at 249. The "'illegality of [a conspiracy] does not depend upon the achievement of its goal' and it therefore 'does not matter that the ends of the conspiracy were from the beginning unattainable.'" <u>United States v. Shellef</u>, 507 F.3d 82, 105 (2d Cir. 2007) (quoting <u>Giordano</u>, 693 F.2d at 249); <u>see</u> <u>also</u> <u>United States v. Rosa</u>, 17 F.3d 1531, 1543 (2d Cir. 1994)("What matters in a conspiracy prosecution is whether the defendants agreed to commit the underlying offense, not whether their conduct would actually have constituted that offense."). Stated another way, "[I]t is the intent of the defendants to violate the law which matters, not whether their conduct would actually violate the underlying substantive statute." <u>United States v. Wallach</u>, 935 F.2d 445, 470 (2d Cir. 1991).

Thus, Courts have upheld a conviction for conspiring to receive stolen goods which had been transported by an interstate

4

carrier even though the goods were not actually stolen (<u>United States v. Petit</u>, 841 F.2d 1546, 1550–51 (11th Cir. 1988), and for conspiring to sell stolen U.S. Savings Bonds even though the government had not proven that bonds were in fact stolen (<u>United States v. LaBudda</u>, 882 F.2d 244 (7th Cir. 1989)). <u>See</u> <u>Wallach</u>, 935 F.2d at 470-71 (citing <u>Petit</u> and <u>LaBudda</u> with approval).

As the Second Circuit stated in <u>Rosa</u>, a defendant may be convicted of the crime of conspiracy "even if the substantive offense was not actually committed, and even if its commission was impossible because, for example, the key acts were to have been performed by agents of the government, . . . or because an essential event did not come to pass, . . . or because the coconspirators were mistaken in their view of the facts." <u>Rosa</u>, 17 F.3d at 1543.

Here, if the jury finds that the defendants agreed to execute a scheme to embezzle funds from Soundview via its subsidiary, CEDC, they would be guilty of conspiracy, whether or not CEDC was, in fact, Soundview's subsidiary. The defendants should be precluded from arguing otherwise.

The Tenth Circuit's decision in <u>United States v. Madsen</u>, 620 F.2d 233 (10th Cir. 1980) is instructive. There, the defendant sold various art objects to an entity called Commercial, but he still kept possession of the art. Thereafter, the defendant repeatedly pledged the art as collateral for bank loans. Each time, the defendant told the bank that he had clear title to the art, failing to mention that he had sold the art to Commercial. He later argued that because Utah statutes made his sale of the art to Commercial voidable, his statements that he had clear title to the art were truthful. As the 10th Circuit put it, such a defense was "imaginative," but "cannot withstand scrutiny." The Court noted that the fact that Utah law provided a basis for voiding his agreement to sell the art to Commercial did "not make the defendant's representations any more truthful."

Here, as in <u>Madsen</u>, while the defendant may be able to concoct some argument based on state law that his agreement to transfer to CEDC to Soundview should be invalidated after-the-fact, this circumstances does not "by some perverse logic make it impossible" (<u>Id</u>. at 234) for him to steal Soundview's funds by siphoning money from CEDC. Even if it were impossible, for all the reasons stated above, that is not a defense to the conspiracy charges in the indictment. As such, it is not relevant to the jury's determination, would serve only the cause of jury confusion, and would attempt to move an issue properly in the Court's domain to the jury. Therefore, the defense should be precluded under Rule 403.

5

## Conclusion

The Court should preclude any defense based on the alleged invalidity of Espada's transfer of CEDC to Soundview.

Respectfully submitted,

LORETTA E. LYNCH
United States Attorney

By:     /s/
Carolyn Pokorny
Roger Burlingame
Todd Kaminsky
Assistant U.S. Attorneys
(718) 254-7000

cc: Defense counsel (by ECF)