UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>-against-<br><br>PEDRO ESPADA, JR. and<br>PEDRO GAUTIER ESPADA,<br>    Defendants. | Cr. No. 10-985 (S-2) (FB) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF JOINT
MOTION TO SEVER COUNTS EIGHT THROUGH EIGHTEEN OF
THE SECOND SUPERSEDING INDICTMENT AND TO STRIKE SURPLUSAGE**

Susan R. Necheles
HAFETZ NECHELES & ROCCO
500 Fifth Avenue, 29th Floor
New York, New York 10110
Telephone: (212) 997-7595
*Attorney for Defendant Pedro Espada, Jr.*

Russell Gioiella
LITMAN ASCHE & GIOIELLA
140 Broadway
New York, New York 10005
Telephone: (212) 809-4500
*Attorney for Defendant Pedro Gautier Espada*

1

Defendants Pedro Espada, Jr. ("Pedro Espada" or "Espada") and Pedro Gautier Espada ("Gautier Espada") submit this reply memorandum of law in further support of their joint motion: (1) to sever Counts Eight through Eighteen of the second superseding indictment ("indictment") pursuant to Rules 8(b) and 14 of the Federal Rules of Criminal Procedure; and (2) to strike surplusage pursuant to Rule 7(d) of the Federal Rules of Criminal Procedure.

## PRELIMINARY STATEMENT

The Government's Memorandum of Law in Opposition to the Defendants' Motion for Severance (the "Opposition"), which weighs in at an impressive 50 pages, is replete with lengthy string citations and discussions of what the government intends to demonstrate at trial, as opposed to what is alleged in the indictment. The heft of the Opposition might have been reduced considerably if the government had taken heed of the Second Circuit's cautioning in *United States v. Rittweger*, 524 F.3d 171, 178 n.3 (2d Cir. 2008), that "the plain language of Rule 8(b) does not appear to allow for consideration of pre-trial representations not contained in the indictment, just as the language of the Rule does not allow for the consideration of evidence at trial." Defendants are not surprised that the government is able to cite cases in which courts have found various charges – even including false statement and tax charges – to be properly joined with other charges under Rule 8(b). However, questions regarding the propriety of joinder under Rule 8(b) are necessarily fact-specific because they can be answered only by reference to the allegations of a single indictment.

Given the length of the Opposition and the array of cases cited by the government, it is not practical – or useful to the Court – for defendants to respond to each of the government's contentions or mischaracterizations, or to attempt to distinguish each cited case. Instead,

defendants will address only a couple of critical points raised by the government and otherwise stand on the arguments raised in their opening brief.

## ARGUMENT

### I. The Government Overstates the Overlap of Evidence between the Section 666 Counts and the False Statement and Tax Counts

Much of the government's argument that all counts of the indictment are properly joined is grounded on the false premise that, if the false statement and tax counts are severed, two "nearly identical" trials would be required. (*See* Opp. Mem. at 46). For example, the government contends that because the alleged false tax returns establish defendants' consciousness of guilt as to the alleged theft from Soundview, it would be required to present its entire s entire tax case in a trial of the § 666 counts. (*See, e.g.,* Opp. Mem. at 44). The government grossly overstates the evidentiary overlap.

The government has provided defense counsel with 3500 material for 90 witnesses. Based on our review of this material, we believe that 12 of the 90 witnesses would only be called to testify regarding the tax-related issues. Further, we also believe that, of the 283 government exhibits received to date, 81 exhibits relate only to the tax charges.

Even if, in a trial on just the theft and fraud charges, the government were permitted to introduce evidence that Espada did not pay taxes on the items he allegedly "stole" from Soundview, it could do so merely by introducing Espada's W-2s from Soundview. There would be no need to call twelve witnesses about a myriad of unrelated issues, such as whether Espada ever lived in a house on Leeland Avenue in the Bronx, whether Espada's donation to Soundview of $150,000 was taxable income, and the correct amount of loss Espada incurred on his investment Regal Realty.

### II. The Alleged CEDC Scheme Cannot Constitute a Violation of 18 U.S.C. § 666(a)(1)(A)

3

The government cites several cases which it contends support its theory that defendants' alleged theft from CEDC, a corporate entity distinct from Soundview and one that did not receive any federal funds, constitutes a violation of 18 U.S.C. § 666(a)(1)(A). *See* Opp. Mem. at 34-37. The cited cases do not advance the government's argument because none of them involve an alleged theft from an entity that never received federal funds.

First, *Abreu v. United States*, 2010 WL 2483993 (S.D.N.Y. June 14, 2010) and *United States v. Young*, 266 F.3d 468 (6th Cir. 2005), involved schemes in which the defendant caused a corporate entity that did not receive federal funds to issue phony invoices to the entity that *did* receive federal funds for services or goods that were never provided. Thus, in those case, the entity which received federal funds was defrauded out of money. Here, however, there is no allegation in the indictment that CEDC issued phony invoices to Soundview for payment or received any payment from Soundview to which it was not entitled.

For similar reasons, *United States v. Sanderson,* 966 F.2d 184 (6th Cir. 1992) is also readily distinguished from the present case. In *Sanderson,* the defendant was a supervisor in a local sheriff's department which maintained a federal contract. The defendant also owned and operated a private contracting business which did work for the sheriff's department. The defendant was convicted of stealing from the sheriff's department by having the department pay invoices from defendant's company for materials he used on his private projects and by having his department employees, while on duty, work on his private projects. *See id.* at 186. Again, the entity which was defrauded was the entity which received federal funds – the local sheriff's department. Here, again, there is no allegation in the indictment that the defendants caused Soundview to pay CEDC for any service or good that CEDC did not provide

4

*Salinas v. United States*, 522 U.S. 52 (1997) and *Fischer v. United States*, 529 U.S. 667 (2000), which the government contends support its view that the alleged theft from CEDC is a theft from Soundview, also fall short of the mark. In *Salinas*, the Supreme Court interpreted the federal bribery statute codified at 18 U.S.C. § 666(a)(1)(B), and not 18 U.S.C. § 666(a)(1)(A), the statute defendants are charged with violating. *See Salinas,* 522 U.S. at 54, 56.

In *Fischer*, the defendant's conviction, under both 18 U.S.C. §§ 666(a)(1)(A) and 666(a)(2), was based on evidence of his fraudulently obtaining a loan, on behalf of a private company of which he was part-owner and president, from a municipal agency that received substantial Medicare funds, and by paying a portion of the funds obtained to the municipal agency's chief financial officer as a kickback. *Fischer*, 529 U.S. at 670. Thus, *Fischer*, like *Abreu, Young* and *Sanderson*, is inapposite because it involves a situation where the defendant stole or obtained by fraud property that was *owned by* an entity that received sufficient federal benefits. Conversely, in the CEDC Scheme alleged in the indictment, CEDC, an entity not alleged to have received any federal benefits, legitimately acquired property – in the form of payments for services rendered – from Soundview, an entity that did receive federal benefits. The alleged theft – from CEDC – occurred only after CEDC had legitimately acquired the funds from Soundview.

The government's claim that "courts in the Second Circuit have ruled that one can defraud a parent corporation by defrauding its subsidiary" also misses the point. *See* Opp. Mem. at 36 n.9. The two such cases cited, *United States v. Bouyea*, 152 F.3d 192 (2d Cir. 1998) and *United States v. Mavashev*, 2009 WL 4746301 (E.D.N.Y. Dec. 7, 2009), interpreted the meaning of statutes involving fraud on "financial institutions," such as 18 U.S.C. §§ 20, 1344 and 3293(2). Specifically, both addressed, albeit in different contexts, the question of whether the

offense in question could be said to "affect" a "financial institution," and not the question of whether a corporate subsidiary's property is under the "care, custody or control" of its corporate parent.

It is certainly not difficult to imagine scenarios in which an offense against a corporate subsidiary has an effect on its corporate parent. In *Bouyea*, for example, the fraud on the subsidiary was found to have an effect on its corporate parent, at least in part, because the subsidiary had borrowed from the parent the money used in the transaction with the defendant. *See Bouyea,* 152 F.3d at 195.

## CONCLUSION

For all of the reasons set forth herein, and in defendants' initial memorandum of law in support of the motion (Docket Entry 64-1), the false statement counts, the CEDC tax counts, and the personal tax counts related to Pedro Espada in counts Eight through Eighteen should be severed from the second superseding indictment pursuant to Rules 8(b) and 14 of the Federal Rules of Criminal Procedure as improperly joined with Counts One through Seven. Further, the allegations contained in paragraph 17 and paragraphs 31(a) through 31(jj) should be stricken from the superseding indictment pursuant to Rule 7(d) because such allegations are irrelevant, as a matter of law, to the charges that Defendants devised and executed certain schemes to obtain property from, or to defraud, Soundview, as charged in counts One through Seven.

Respectfully submitted,

DATED: New York, New York
February 17, 2012

By: /s/Susan R. Necheles
Susan R. Necheles
Hafetz Necheles & Rocco
500 Fifth Avenue, 29th Floor
New York, New York 10110
Telephone: (212) 997-7595
Facsimile: (212) 997-7646

*Attorney for Pedro Espada, Jr.*

/s/ Russell Gioiella
Russell Gioiella
LITMAN ASCHE & GIOIELLA
140 Broadway
New York, New York 10005
Telephone: (212) 809-4500
Facsimile:   (646) 607-9643
*Attorney for Pedro Gautier Espada*