# HAFETZ NECHELES & ROCCO

ATTORNEYS AT LAW

---

500 FIFTH AVENUE
NEW YORK, N.Y. 10110
TELEPHONE: (212) 997-7595
TELECOPIER: (212) 997-7646
E-MAIL: INFO@HNRLAWOFFICES.COM

February 22, 2012

Hon. Frederic Block
United States District Court
Brooklyn Federal Court House
225 Camden Plaza
Brooklyn, New York 11201

Re:  United States v. Espada, et al.
Cr. No. 10-985 (S-2) (FB)

Dear Judge Block,

Defendants Pedro Espada, Jr. (Espada) and Gautier Espada respectively submit this letter as a joint response to the government's letter of February 6, 2012, seeking to preclude certain evidence and arguments at trial.

## Argument

The government's motion seeks to prevent the defense from introducing any evidence whatsoever concerning a wide range of poorly defined issues.  For example, it is difficult to discern exactly what the government seeks to preclude when it moves to preclude not only any claim of selective prosecution but also any evidence "regarding defendant's vendetta theories." As we explain below, much of the evidence to which the government objects is relevant for reasons beyond the Government's narrow categorizations.

Additionally, certain aspects of the motion would require the Court to make factual findings, under the guise of an *in limine* motion, and then preclude the defendants from disputing those facts. But this is not a motion for summary judgment and the defendant has a constitutional right to challenge the government's factual allegations at trial.

1

HAFETZ NECHELES & ROCCO

### 1. Selective Prosecution

The government seeks to preclude defendants from arguing that the indictment is "part of a vendetta against him" because such argument would be a "claim of selective prosecution," which "raises an issue that is independent of the question of the defendants' guilt or innocence," and therefore is not a jury issue, but must instead be directed to the Court in pretrial proceedings. (Govt's February 6, 2012 letter ("Gov. Mot.") at 2-3).

A selective prosecution defense is "not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *United States v. Regan*, 103 F.3d 1072, 1081 (2nd Cir. 1997) (quoting *United States v. Armstrong*, 517 U.S. 456 (1996)). In other words, selective prosecution involves a claim that the defendant, although guilty, is being wrongfully prosecuted.

The defendants have no intention of arguing that they are guilty of the charges against them but nonetheless must be acquitted because the government unfairly targeted Espada or has a political vendetta against him. Rather, defendants will argue that they are not guilty of the crimes charged in the indictment. Thus, the government's *in limine* motion seeking preclusion of an argument of selective prosecution is irrelevant.

However, the government seeks to preclude far more than an argument that the instant case is the result of selective prosecution - the government apparently wants to preclude any evidence that its witnesses or the defendant ever believed that they or Soundview were under investigation, or that there were investigations of them or Soundview in the past. To the extent that the government is arguing that the defendants should not be able to introduce evidence concerning *the state of mind* of the defendants or their witnesses over the last ten years - i.e., that they believed that because of Espada's political positions, they and Soundview were constantly under scrutiny by the government - the government's argument is contrary to the law and invites reversible error.

The charges in the indictment all require the government to prove that the defendant intentionally committed the crimes charged. Thus, Counts One through Six of the second superseding indictment require the government to prove that the defendants knowingly and intentionally took money that they were not entitled to take. *United States v. Dubon-Otero*, 292 F.3d 1, 4 and 12 (1st Cir. 2002). Count Seven requires that the government prove that defendants knowingly and intentionally conspired to defraud Soundview. *See United States v. Carl*, 507 F.3d 799, 801-802 (2nd Cir. 2007) (holding that, to sustain a conviction for conspiracy to commit wire fraud, "the government must prove that the defendant acted with specific intent to obtain money or property by means of a fraudulent scheme"). Counts Eight and Nine require the government to prove that Espada knowingly and intentionally made false statements to the government. *See United States v. Geisen*, 612 F.3d 471, 487 (6th Cir. 2010). Counts Ten through Eighteen require the government to prove that the defendants knowingly and intentionally made false statements on tax returns. *United States v. Pomponio*, 429 U.S. 10, 12 (1976); *United States v. Aracri*, 968 F.2d 1512, 1523 (1992).

In defense of these charges, the defendants are entitled to introduce evidence that they, as well as Government witnesses, believed that (1) there was a political vendetta against Espada, and (2) as a result of this political vendetta, the government was constantly scrutinizing

HAFETZ NECHELES & ROCCO

everything that Espada or other people associated with him did with respect to Soundview, including all of his expenditures of money.  This evidence is relevant as circumstantial evidence that the defendants believed that Espada's expenditures from Soundview, which were made openly, were proper and as reflecting on the credibility of Government witnesses who were likewise aware that their conduct would receive a high degree of scrutiny.

### 2. Evidence of negligence or incompetence of Soundview officers and board members.

In a remarkable attempt to prevent the defendants from introducing evidence that someone else is responsible for the wrongdoing they are charged with in this case, the government also seeks to preclude evidence of wrongdoing, negligence or incompetence by anyone at Soundview.  The government wrongly characterizes this as a "blame the victim" defense, and asserts that defendants will argue that they are not guilty because others at Soundview are guilty as well.

The cases that the government cites are inapposite.  The government cites a number of bank fraud cases which held that if a defendant conspired with an officer or employee of a bank to obtain money by means of false statements to the bank, then the defendant is guilty of fraud or theft, even though the bank officer or employee knew that the statements that were made were false.  *See, e.g., United States v. Saks*, 964 F.2d 1514, 1518-19 (5th Cir. 1992) (evidence that bank officers were aware of, or participated in, a fraudulent loan transaction was not a defense to bank fraud because bank officers can "nevertheless defraud the institutions they serve" and also be convicted as "principals or aiders and abettors.")

These cases have nothing to do with the issues in this trial.  The defendants do not intend to argue either that they conspired with officers or members of the Board to steal money from Soundview or that others at Soundview knew about their alleged false statements, so therefore the defendants did not steal from or defraud Soundview.

However, to the extent that the government is arguing that the holdings in the cases it cites preclude the defendants from introducing evidence or arguing that (1) Soundview consented to the  charged conduct, or (2) errors on Soundview's books were not thefts by the defendants but were instead errors by incompetent employees of Soundview, the government's argument is erroneous.

First, to prove theft or embezzlement, the government must prove that the defendants knowingly and wrongfully took money that they did not have permission to take.  *See United States v. Crumbliss*, 58 Fed. Appx. 577, 579-80 (4th Cir. 2003); *United States v. Dubon-Otero*, 292 F.3d 1, 12-13 (1st Cir. 2002); *United States v. Richards*, 9 F.Supp. 2d 455, 458 (D.N.J. 1998).  Thus, it is a complete defense for the defendants to establish (1) that they believed they were entitled to take the money or property that they took, or (2) they believed that Soundview had consented to their taking this money.  *Crumbliss*, 58 Fed.Appx. at 579-80 (approving of jury instruction that a defendant's good faith was "a complete defense" to a charge of theft or embezzlement under § 666 because "good faith is simply inconsistent with knowingly and willfully converting, embezzling and intentionally misapplying property.")

Accordingly, the defendants must be entitled to introduce evidence that Soundview knew about and consented to the defendants obtaining the money that they are charged with stealing.

HAFETZ NECHELES & ROCCO

Indeed, in the cases cited by the government, the defendants were *not* precluded from introducing evidence that officers or employees of the banks consented to the defendant taking the money at issue. The courts merely held in each of those cases that the evidence that the bank employee or officer knew of the defendant's false statements did not, given the particular facts of each of those cases cited, mandate the jury's acquittal of the defendant.

Second, the defendants are entitled to argue that any errors in the books and records of Soundview do not reflect theft by the defendants, but instead reflect incompetence or negligence by a Soundview employee. Similarly, the defendants are entitled to argue that the failure to record on Soundview's books certain income to Espada was not because Espada stole the money but was because the employee charged with this task was incompetent or negligent. There is no basis for precluding such evidence of the defendants' innocence.

### 3. Evidence that government agencies knew that Espada had allegedly lied on documents.

Espada is charged with two counts of violating 18 U.S.C. § 1001 for allegedly making false statements on documents submitted to federal agencies. It is unclear what specific evidence the government seeks to preclude the defendant from introducing.

For a defendant to be convicted of making a false statement under § 1001, the government must prove beyond a reasonable doubt that the defendant had an "intent to deceive," *United States v. Geisen*, 612 F.3d 471, 487 (6th Cir. 2010) and "that the defendant either knew the statement was false" or "or acted with a conscious purpose to avoid learning the truth." *United States v. West*, 666 F.2d 16, 19 (2nd Cir. 1981) (internal citations omitted); *see also United States v. Mahaffy*, 285 Fed. Appx. 797, 800 (2nd Cir. 2008) (holding that "an intent to deceive, without more" is insufficient to sustain a conviction under § 1001). Thus, Espada is entitled to introduce evidence that (1) the statement at issue was not false, (2) he did not *believe* the statement was false, or (3) he had no *intent* to deceive the government.

### 4. The Agreement to Transfer CEDC

Part of the allegations concerning theft from Soundview relates to a company called CEDC. The government claims that CEDC, which had been owned by Pedro Espada for many years, was transferred to Soundview by Mr. Espada, that the defendants thereafter took CEDC's money without Soundview's permission, and therefore that the defendants stole from, and conspired to steal from, Soundview.

Obviously, it is a complete defense to these theft charges if Espada continued to own CEDC, rather than Soundview. Remarkably, the government seeks to *preclude* the defendants from introducing evidence that Espada still owned the company from which the government alleges that he stole.

The government seeks this unprecedented relief, in essence, by arguing that the facts support the government's version of events, and the defendants' version. This remarkable attempt to eliminate defendants' Constitutional right to present a defense should be summarily denied.

HAFETZ NECHELES & ROCCO

First, the government asserts, as a factual matter, that Espada "transferred controlling ownership of CEDC to Soundview in 2005 for $1." The government argues that the defendants should be precluded from arguing that Soundview never paid this $1, and therefore never purchased Soundview because, according to the government, the issue of whether the $1 consideration is adequate is not a jury issue.

The government's argument about the law concerning *adequacy* of the consideration is irrelevant. The defendant is, of course, entitled to argue that even if the government proves that a contract was agreed upon, that contract never actually was executed, and therefore Soundview never owned CEDC. The issue is whether Soundview actually acquired CEDC, including whether Soundview fulfilled its obligations under the contract. This is a question of fact that must be decided by the jury. *See e.g. Burke v. Steinmann*, 2004 WL 1117891, *7 (S.D.N.Y. May 18, 2004) (denying summary judgment because resolving disputed facts over whether one party lived up to their obligations under a contract was a question for the jury).

Moreover, defendants' belief at the time of the alleged theft as to whether the transfer took place is highly relevant to whether the defendants had an intent to steal. The failure to pay the required consideration also is relevant to whether Soundview intended to consummate the transfer.

In addition, the government argues that cases have held that a pledge of a donation to a charity is enforceable by the charity even absent consideration, and therefore the defendant should be precluded from arguing that Soundview did not pay the $1 and therefore did not acquire CEDC. However, the government's argument assumes questions of fact, such as (1) whether what occurred here was (a) an enforceable pledge without consideration or (b) an unenforceable contract because the consideration agreed upon was never paid, and (2) whether (a) Soundview ever actually sought to enforce the contract or pledge, and actually acquire CEDC, or (b) the parties never actually fulfilled the agreement and transferred CEDC.

These are all factual questions which must be resolved at trial and which would be highly relevant to the issue of the defendants' intent, regardless of whether CEDC was or was not actually transferred. The government cites no case which suggests that these factual issues could be resolved prior to trial in a criminal case, or that the Court could constitutionally preclude the defense from challenging the government's version of events.

The government fares no better with its argument regarding ratification. Again, the government asserts that certain facts occurred, and therefore claims that based on its version of the facts, the defendants "ratified" Soundview's acquisition of CEDC and should be precluded from arguing otherwise. The weakness of the government's argument is shown by the total irrelevancy of the cases it cites in support of this argument.

For example, *United States v. Cartwright*, 632 F.2d 1290 (5th Cir. 1980), is an appeal from a conviction in a criminal case for bank fraud. The defendant argued that his conviction should be set aside because, as a matter of law, the company that he allegedly defrauded was not a subsidiary of the bank because the bank did not obtain approval for obtaining the subsidiary from the appropriate Texas agency as required by state law. The Court of Appeals never addressed the issue of whether the defendant was entitled to introduce evidence concerning this issue *at trial* - which is the only issue here. Instead, the Fifth Circuit merely held that because

HAFETZ NECHELES & ROCCO

this was a federal case, state law was irrelevant and the government had sufficiently proven that the defrauded company was a subsidiary of the bank under federal law, because the company operated and held itself out as a subsidiary.  That, of course, was a question of fact at trial

*United States v. Blackburn*, 9 F.3d 353, 357 (5th Cir. 1993), is even less helpful to the government's argument.  That case did not even deal with the issue of a subsidiary.  Instead, it dealt with the totally irrelevant issue of whether a scheme to defraud a bank was proven where the government proved at trial that the defendant intentionally created the false appearance that the pledge of a CD to the bank was binding, and the bank relied upon that falsity in granting a loan.  Thus, the issue was not ratification - it was bank fraud.

Finally, the government argues that since impossibility is not a defense to a conspiracy charge, the defendants should not be able to introduce evidence that CEDC was not owned by Soundview. Without dwelling on this legal theory in general, we would note that here, if CEDC was not owned by Soundview, Espada would be conspiring to steal from himself.

In any event, in making this argument, the government ignores the substantive charges of theft.  Impossibility is, of course, a defense to those charges.

Thus, there is no basis to preclude introduction of evidence or arguments challenging Soundview's ownership of CEDC.

### 5. Evidence of Espada's prior state court acquittal

The government's request to preclude evidence of Espada's prior state court acquittal is premature.  It appears that the government intends to introduce evidence of prior prosecutions of Soundview employees and to introduce evidence of legal fees spent by Soundview defending employees, including legal fees spent defending Espada.  In such case, defendants are entitled to show evidence that Espada has no prior convictions.

### 6. Reference to Impact of Conviction on Soundview

The government's request to preclude reference to the potential impact of the defendants' conviction on Soundview also should be denied as premature.  This evidence may be relevant at trial depending on what evidence the government introduces.

### 7. The government's requests for discovery pursuant to rule F.R.Crim.P. Rule 16(b) and disclosure of whether defendants will raise an "advice of professionals" defense.

Defendant will meet their discovery obligations under Rule 16(b) and provide 3500 material for defense witnesses, if any, at least two weeks before they testify.

However, the government additionally has moved for defendants to disclose whether they intend to "offer a defense that they relied on the advice of professionals, such as attorneys, auditors or accountants."  But Rule 16(b) pointedly does not require—nor does it authorize the Court to order—such disclosure and discovery.

HAFETZ NECHELES & ROCCO

Under the Rule 16(b), defendants must provide documents and objects that are in the defendants' possession and that the defendants plan to use in their "case in chief at trial," as well as a written summary of any expert testimony that the defendants intend to use.

a. *Expert testimony*

The defendants are aware of their obligation to disclose expert testimony. We currently do not intend to call an expert witness to testify.

b. *Documents Regarding Advice of Professionals*

Other than documents which the defendants received from the government in discovery, we currently do not intend to introduce any documents in our direct case. We will disclose any such documents that we are aware of one week prior to the end of the government's case.

As to documents specifically related to the advice of professionals, we currently do not intend to introduce in evidence any documents concerning the advice of professionals that are not included in the materials already in the possession of the government. Specifically, the government has in its possession (1) financial documents created by finance people at Soundview, (2) all work papers and tax returns from Espada and CEDC's accountants, and (3) all work papers and tax returns from all of Soundview's outside accountants. Thus, to the extent that the defendants intend to rely on any documents produced by the government to the defense in any of these productions, the government is already aware of those documents.

c. *Substance of the Defense*

The government does not cite any rule or case in support of its argument that the defendants are required prior to trial to disclose the *nature* of its defense. The principal case that the government relies on is a district court case in Kansas, *United States v. Cooper*, 283 F.Supp. 2d 1215, 1225 (D. Kan. 2003). In *Cooper*, the defendants were ordered to disclose *documents* relating to an advice of counsel defense . Here, however, we have stated that any documents from professionals on which we currently intend to rely are already in the government's possession.

The government also relies on *United States v. Hatfield*, 2010 WL 183522, at *13 (E.D.N.Y. Jan. 8, 2010). But that case involved a defense of reliance on attorneys, and assertions that documents were privileged and could not be seen by the government. The court merely ruled that if the defense intended to rely upon privileged documents, they were required to waive privilege and disclose those documents to the government prior to trial. There is no assertion here of privilege and, as we have already stated, the government already has all relevant documents of which we are currently aware from financial professionals.

Accordingly, the government's motion to compel the defendants to reveal the nature of their defense should be denied.

HAFETZ NECHELES & ROCCO

## Conclusion

For the foregoing reasons, defendants request that the government's motion to preclude evidence and argument be denied in its entirety.

Respectfully Submitted,

By:   /s/Susan R. Necheles
Susan R. Necheles
Hafetz Necheles & Rocco
500 Fifth Avenue, 29th Floor
New York, New York 10110
Telephone:  (212) 997-7595
Facsimile:   (212) 997-7646
*Attorney for Pedro Espada, Jr.*

/s/ Russell Gioiella
Russell Gioiella
LITMAN ASCHE & GIOIELLA
140 Broadway
New York, New York 10005
Telephone:  (212) 809-4500
Facsimile:   (646) 607-9643
*Attorney for Pedro Gautier Espada*