# Hafetz Necheles & Rocco

ATTORNEYS AT LAW

---

500 Fifth Avenue
New York, N.Y. 10110
Telephone: (212) 997-7595
Telecopier: (212) 997-7646
E-mail: info@hnrlawoffices.com

March 5, 2012

The Honorable Frederic Block
United States District Court
Brooklyn Federal Courthouse
225 Cadman Plaza, East
Brooklyn, New York 11201

      Re:    United States v. Espada et al.
                Cr. No. 10-985 (S-2)(FB)

Dear Judge Block:

      We submit this letter in reply to the government's response to defendants' motion to dismiss Counts Eight, Nine, Eleven, Twelve, Thirteen, Fourteen, Sixteen, Seventeen and Eighteen for lack of venue.

      To provide clarity, we attach to this letter a chart summarizing (1) the charges in the Second Superseding indictment, which was filed on January 18, 2012 and on which the defendants were arraigned on January 25, 2012, (2) the venue allegations concerning each count, (3) whether the defendant has moved to dismiss the count based on lack of venue, and (4) the government's response to defendants' venue motion, and (5) the date on which the indictment first charging these counts was filed.

## I. Counts Eleven, Twelve, Thirteen, Fourteen, Sixteen and Eighteen Must Be Dismissed

      The government concedes that Counts Eleven, Twelve, Thirteen, Fourteen, Sixteen and Eighteen must be dismissed. These are all of the tax counts in the Superseding Indictment except for Counts Ten, which alleges a conspiracy to defraud the United States by impeding the lawful function of the Internal Revenue Services by filing false corporate (CEDC) and personal

tax returns, and Count Fifteen, which charges that Espada filed a false personal tax return for the 2005 tax year. The sole factual basis for venue for the remaining two tax counts is that the tax preparer for Espada's 2005 tax return had offices in Long Island.

The government states that notwithstanding its concession that there is no venue as to the other tax counts and its agreement that these counts must be dismissed, nonetheless the government intends to introduce in evidence at trial all of the evidence it would otherwise have offered concerning all of the dismissed counts. We address this argument below. First, however, we address the government's claim that defendant's motion regarding Counts Eight and Nine must be denied as untimely.

## II. Counts Eight and Nine must be dismissed for lack of venue

In its response to the defendants' motion to dismiss Counts Eight and Nine for lack of venue the government concedes that there is no venue on these counts in the Eastern District of New York. Nonetheless, the government argues that the Court should deny the defendants' motion as untimely. The government's response is incorrect as a matter of law.

The Second Circuit has instructed:

Both Rule 18 of the Federal Rules of Criminal Procedure and the Constitution require that a person be tried for an offense where that offense is committed." [FN7] *United States v. Cabrales*, 524 U.S. 1, 5, 118 S.Ct. 1772, 141 L.Ed.2d 1 (1998) (citations and internal quotation marks omitted); *see also United States v. Anderson*, 328 U.S. 699, 703, 66 S.Ct. 1213, 90 L.Ed. 1529 (1946) ("[T]he *locus delicti* must be determined from the nature of the crime alleged and the location of the act or acts constituting it."). Indeed, the Constitution protects a criminal defendant's right to proper venue in two places: Article III; and the Sixth Amendment. [FN8] An example *161 of the strength of that protection is manifested in the principle that, when an indictment charges a defendant with multiple counts, "venue must be proper with respect to each count." *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1188 (2d Cir.1989).

[T]he constitutional underpinning and importance of proper venue dictate that waiver of objections to venue should not be readily inferred." *United States v. Price*, 447 F.2d 23, 27 (2d Cir.1971). That being the case, this Court has found a waiver of the right to challenge venue in a criminal trial only under extraordinary circumstances. One such circumstance is "when the indictment or statements by the prosecutor clearly reveal [a venue] defect but the defendant fails to object." *Id.; see also United States v. Khan*, 821 F.2d 90, 93 (2d Cir.1987) (finding waiver in light of a clear defect in venue apparent on the face of the indictment); *United States v. Levasseur*, 816 F.2d 37, 45 (2d Cir.1987) (agreeing with the district court that defendant had waived his right to contest venue at the close of evidence where "the indictment gave clear notice of venue defects."). Therefore, even though it is afforded significant Constitutional protection, a defendant's

right to proper venue is a personal defense subject to waiver. *See United States v. Calderon*, 243 F.3d 587, 590 (2d Cir.2001).

> These cases establish a clear rule concerning the timeliness of a defendant's objection to venue in a criminal action. When the defect in venue is apparent on the face of the indictment, a defendant waives the right to contest the issue if he or she fails to object prior to trial. It follows that, when a venue defect is not clear on the face of the indictment, a defendant may raise the objection for the first time in a motion for acquittal at the close of the government's evidence.

*United States v. Novak*, 443 F.3d 150, 160 (2d Cir. 2006).

Here, the defendants have objected to the lack of venue and trial has not yet commenced. Thus, the defendants have complied with the Second Circuit's "clear rule concerning the timeliness of a defendant's objection to venue in a criminal action" and the defendants did not waive venue.

The government, however, argues that even though there is clearly no venue as to counts eight and nine, and even though the defendants made their motion prior to the commencement of trial, nonetheless the Court has the discretion to deny defendants' motion for dismissal. The government bases this argument - which contradicts the clear language of *Novak*, on Rule 12, arguing that pre-trial motions must be made within the time frame set by the court, and here the Court required pre-trial motions to be filed by February 6, 2012. In addition to contradicting the Second Circuit's holding, there are three additional reasons that the government's argument should be rejected.

First, the government is wrong on the facts. The Court did not set a hard deadline for the filing of all pre-trial motions. Indeed, the government continues to file motions on a weekly basis.

Second, Rule 12 of the Federal Rules of Criminal Procedure states that the Court may hear motions regarding jurisdiction at any time, not just within the time frame set for pre-trial motions.

Finally, the government's argument that the defendants are engaged in "gamesmanship" turns reality on its head. It is the government who should be explaining to the Court why it failed to bring the lack of venue to the Court's attention, but instead seemingly sought to sneak Counts Eight and Nine through, at the last moment prior to trial, when the Court and defense counsels' attention was focused on a myriad of different issues that the government first raised during this time period.

Thus, the Superseding Indictment, which for the first time charged defendants with filing false documents with the federal government, was not filed until the eve of trial - on January 18, 20012. The government has conceded that it had it has been aware of at least one of the

HAFETZ NECHELES & ROCCO

allegedly false documents since at least June 2011,[1] but the government has never given any explanation as to why it waited until the very last minute - January 18, 20012 - to file these new charges.

After filing the new charges, the government inundated defense counsel and the Court with vast quantities of discovery and filings. The following is a partial summary of the brand new discovery, new charts,[2] 3500 material, and exhibits produced to the defense in the three weeks following the filing of the superseding indictment:

| 1/18 | Superseding indictment filed. |
|------|-------------------------------|
| 1/20 | 3679 pages of new discovery provided to the defense, including 600 pages directly relevant to the new HRSA charges in the indictment. |
| 1/23 | Updated summary charts provided to the defense, containing new allegations of approximately 20 new alleged thefts that defense was required to investigate. |
| 1/25 | Defendant's arraigned on superseding indictment. |
| 1/25 | Letter filed by the government disclosing that it had failed to comply with the requirements of the search warrant. |
| 1/28 | New discovery provided to the defense, including HRSA documents. |
| 1/30 | Updated draft exhibit list provided to the defense. |
| 1/30 | 1300 pages of new discovery provided to the defense, including new charts and new allegations of theft and - for the first time ever - a copy of the filed tax returns at issue in this case. |
| 2/3  | New discovery provided to the defense. |

---

[1] The government asserts in footnote one of its letter to the Court that it gave the document containing the false statement charged in Count Eight to defense counsel seven months ago and labeled this document a "hot" document. This is untrue. Included in the "hot documents" was a letter that Espada wrote to Soundview concerning SME's profit. The hot documents did *not* include any indication that this letter was ever submitted to HSA, as the indictment now alleges. And, at the time that this document was given to the defense there was no charge in the indictment related to this document, the document did not seem particularly relevant at that time to defense counsel.

[2] The government's charts contain the details in the allegations regarding the alleged thefts and tax crimes. The charges in this case allege theft and tax frauds covering a five year period. The charts contain the details of the hundreds of alleged thefts, and the breakdown of the alleged tax fraud. Thus, each revised chart contains totally new allegations regarding thefts which must be investigated by the defense.

HAFETZ NECHELES & ROCCO

| | |
|---|---|
| 2/6 | Government's motion *in limiine* filed, moving to preclude the defense from arguing or introducing evidence concerning six broad categories of evidence. |
| 2/6 | New discovery provided to the defense. |
| 2/7 | *Curcio* letter filed by the government, arguing conflict based on information the government has had in its possession for at least three months. |
| 2/8 | Updated government list filed and new charts with new theft allegations. |
| 2/10 | Copy of government exhibits provided to the defense for the first time. |
| 2/13 | Additional HRSA documents provided to the defense. |
| 2/13 | Notice of government's proposed expert witness on not-for-profit entities and on IRS regulations governing salaries and reimbursement plans given to the defense for the first time. |
| 2/13 | Additional 3500 material and exhibits provided. |
| 2/16 | 33 proposed government stipulations covering approximately 50 exhibits provided for the first time to the defense. |
| 2/17 | Letter with additional *Curcio* issues. |
| 2/17 | Government gives 404(b) notice regarding two alleged bad acts by Espada. |
| 2/27 | Additional discovery provided, including revised government charts. |

Defense counsel's motions to sever were filed on February 8, just two weeks after the defendants were arraigned on the superseding indictment and just three weeks after the superseding indictment was filed. In the meantime, the government provided to the defense thousands of pages of 3500 material concerning over 90 witnesses, thousands of pages of exhibits, and three versions of newly amended charts. The government also filed an *in limine* motion, a *Curcio* motion, asked the defense to agree to 33 stipulations covering 50 exhibits, provided notice of expert testimony, and provided 404(b) notice.

HAFETZ NECHELES & ROCCO

Thus, the defense was dealing with many issues in the two weeks following the defendants' arraignment on the superseding indictment. It is not surprising that defense counsel did not notice during this two week period the lack of venue in Counts Eight and Nine.

On the other hand, the government was well aware of this lack of venue. The government knew that this lack of venue was directly relevant to the defendants' motion for severance that the Court was considering. Why didn't the government bring this to the Court's attention or ask for a knowing waiver of venue from the defendants?

Thus, it is the government's extreme tardiness on multiple fronts and the government's failure to inform the Court of clearly relevant information regarding defendants' severance motion - the lack of venue on Counts Eight and Nine - leads to the inevitable conclusion that the government was trying to sneak these counts through, hoping that the defense would not focus on the issue of lack of venue until trial had already begun and they had inadvertently waived their right to object.

Given the government's culpability here, they should not be heard to complain that defendants are asserting their constitutional right to be tried in a district with venue.

Accordingly, for all the reasons set forth above, defendant's motion to dismiss Counts Eight and Nine due to lack of venue must be granted.

### III. The Court Should Re-Consider Its Decision And Sever Counts Ten and Fifteen

The government states that it intends to re-indict Espada on the dismissed tax charges and to try him in the Southern District of New York on these charges.

Given this promise by the government, there no longer can be any claim by the government that judicial economy is served by introducing evidence of the tax conspiracy here. To the contrary - introduction of evidence regarding the tax crimes here will double the length of this trial, but there still will be a second trial on the same matter, requiring the same set of accountants and other witnesses to appear to testify about the tax crimes.

Moreover, while the Court held that the tax counts were related to the theft counts for the purpose of joinder under Rule 8, that does not make the tax counts relevant to the theft counts. In other words, proof that Espada did not declare on his personal income tax returns money that he allegedly stole from Soundview does not help the government to establish that there was any theft from Soundview. Thus, if Counts Ten and Fifteen were severed there would be no basis for the government to introduce evidence concerning the allegedly fraudulent tax returns filed by Espada and the evidence in this trial would be greatly shortened.

Thus, while Your Honor has ruled that the tax counts are properly joined pursuant to Rule 8, nonetheless severance is proper here pursuant to Rule 14 in the interest of judicial economy and preventing witnesses from having to testify twice in two different trials about the identical

HAFETZ NECHELES & ROCCO

issues. Accordingly, Counts Ten and Fifteen should be severed and transferred to the Southern District of New York, to join the tax case against Espada which the government has stated that it intends to bring in the Southern District of New York.

## CONCLUSION

For the reasons set forth in defendants' initial memorandum of law and above, defendants respectfully request that the Court (1) dismiss for lack of venue Counts Eight, Nine, Eleven, Twelve, Thirteen, Fourteen, Sixteen and Eighteen, and (2) sever Counts Ten and Fifteen.

Respectfully submitted,

By: /s/Susan R. Necheles
Susan R. Necheles

/s/ Russell Gioiella
Russell Gioiella

cc: Carolyn Pokorny, Esq.
Roger Burlingame, Esq.
Todd Kaminsky, Esq.

HAFETZ NECHELES & ROCCO

| | Charge | Venue Pleaded in Indictment | Defs. moved to dismiss? | Gov. Response. | Date Charges Added To Indictment |
|---|---|---|---|---|---|
| 1 | Conspiracy to violate 18 U.S.C. §666 by stealing from Soundview Health Center. | "Eastern District of New York and elsewhere" (paragraph 30-) | No | None | December 2010 |
| 2 - 6 | Violation of 18 U.S.C. §666 by stealing from Soundview Health Center. | "Eastern District of New York and elsewhere" (paragraph 33). | No. | None. | December 2010 |
| 7 | Wire Fraud - Defrauded Board of Soundview by Rigged Bids. | "Eastern District of New York and elsewhere" (paragraph 35). | No. | None. | March 25, 2011 |
| 8 | False Statement - Espada submitted a false statement to the Department of Health and Human Services certifying that SME earned profits in the amount of $35,000 in 2008 as a result of its contract with Soundview. | "Southern District of New York" (paragraph 36). | Yes. | Concedes lack of jurisdiction but opposes dismissal motion as untimely. | January 18, 2012 (documents containing false statement made to HHS not provided to defense until _____). |
| 9 | False Statement - Espada made false statement to HRSA regarding Espada's salary in 2010. | "Southern District of New York" (paragraph 37). | Yes | Concedes lack of jurisdiction but opposes dismissal motion as untimely. | January 18, 2012 (document containing false statement to HRSA not provided to defense until _____). |
| 10 | Conspiracy to Defraud the United States - Defendants conspired to obstruct the lawful functions of the IRS in the | "Eastern District of New York and elsewhere" (paragraph 39). | No | None. | March 25, 2011 |

HAFETZ NECHELES & ROCCO

| | Charge | Venue Pleaded in Indictment | Defs. moved to dismiss? | Gov. Response. | Date Charges Added To Indictment |
|---|---|---|---|---|---|
| | ascertainment and collection of revenue, to wit; corporate taxes owed by CEDC and personal income taxes owed by the defendants. | | | | |
| 11 - 14 | False Tax Returns for CEDC for the 2004 and 2005 fiscal years. | "Southern District of New York and elsewhere" (paragraph 42) | Yes | Concedes lack of jurisdiction and that charges must be dismissed. | March 25, 2011 (documents establishing lack of jurisdiction first given to defense on January 30, 2012). |
| 15 | Espada filed false personal tax return for the 2005 tax year. | "Eastern District of New York and elsewhere" (paragraph 46) | No | None. | N/A |
| 16-18 | Espada filed false personal tax returns for the 2006, 2007 and 2008 tax years. | "Southern District of New York and elsewhere" (paragraph 48) | Yes | Concedes lack of venue and that charges must be dismissed. | March 25, 2011 (documents establishing lack of jurisdiction first given to defense on January 30, 2012). |