HAFETZ NECHELES & ROCCO
ATTORNEYS AT LAW

500 FIFTH AVENUE
NEW YORK, N.Y. 10110
TELEPHONE: (212) 997-7595
TELECOPIER: (212) 997-7646
E-MAIL: INFO@HNRLAWOFFICES.COM

March 12, 2012

The Honorable Frederic Block
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: *United States v. Pedro Espada, Jr., et al., 10 CR 985 (s-2)(FB)*

Dear Judge Block,

Defendants Pedro Espada, Jr. ("Espada) and Gautier Espada respectfully submit this letter in opposition to Non-Party Kostalanetz & Fink, LLP's Motion to Quash Defendant Pedro Espada, Jr.'s Subpoena to the Firm ("Motion to Quash"). (Docket Entry #105-1).

**Background**

Amy Walsh, Esq., a partner at law firm Kostalanetz & Fink, LLP ("K&F"), represents Marc Koppelman, a partner at accounting firm Marks Paneth & Shron, who is a cooperating witness in this case. Koppelman handled several important projects for Espada, CEDC and Soundview and is expected to provide critical testimony for the government regarding, among other issues, the alleged thefts from CEDC.

On or about February 28, 2012, defendants served Walsh with a subpoena (the "Trial Subpoena") for her notes of meetings between Koppelman and law enforcement agents concerning the defendants, Soundview, CEDC, SME or "any investigation thereof," as well as her notes of any conversations between her or Koppelman, and law enforcement agents, in which an agent alleged that Koppelman had committed crimes or threatened him with prosecution. (*See* Exhibit A). K&F contends that the Trial Subpoena should be quashed because it is "unreasonable and oppressive in that it seeks documents that are (1) are not discoverable under Rule 17(c); and (2) are protected by the attorney work-product privilege." (Mot. to Quash at 3).

In an affirmation submitted in support of the Motion to Quash, Walsh states that she and Koppelman met with federal law enforcement agents four times: January28, 2011; September 20, 2011; September 30, 2011; and "one additional time in late 2011 or early 2012." (3/6/2012

Walsh Affirmation at ¶¶ 7-8 (Docket Entry #105-2) ("Walsh Aff.")).[1] Walsh acknowledges that she took handwritten notes at each of these four meetings and that she also prepared a typed memorandum of her notes from the first meeting. (*Id.* at ¶ 8). Walsh further acknowledges that she took handwritten notes during three telephone conversations she had with the prosecutors in this case, which conversations took place on January 11, 2011; September 14, 2011; and January 9, 2012, without Koppelman being present. (*Id.* at ¶ 10).

Walsh represents that her handwritten notes taken during each of her four meetings and three telephone conversations with the government, as well as the lone typed memorandum, "were not verbatim recitations of the statements made by [Koppelman] or the government attorneys and agents" during these meetings and conversations, but instead contain her "selective description" of "certain portions of the interviews" or, with the respect to the telephone conversations, "the information given by, or exchanged with, the government." (*Id.* at ¶¶ 9-10).

Prior to retaining Walsh, Koppelman was represented by different counsel. Walsh understands that Koppelman was interviewed by the government before he retained Walsh and that the government had warned his prior counsel that Koppelman "might be subject to criminal prosecution." (*Id.* at ¶ 6). At some point after Koppelman's proffer session with the government on January 28, 2011, the government advised Walsh that Koppelman "would likely be called as a potential witness in its case against the defendants. (*Id.* at ¶ 7). The government has also represented to counsel for the defendants that it intends to call Koppelman as a witness against the defendants at the trial, but the §3500 material the defendants have received for Koppelman does not include any proffer, non-prosecution or cooperation agreement.

The Motion to Quash should be denied because the subpoenaed documents are within the scope of Rule 17(c) and defendants have a substantial need for the contents of Walsh's notes that overcomes any work product privilege, and because disclosure of the notes will not prejudice Koppelman.

**Argument**

The enforcement of a subpoena duces tecum issued pursuant to Rule 17(c) of the Federal Rules of Criminal Procedure is "within the sound discretion of the district court." *United States v. Ferguson*, Crim. No. 3:06CR137 (CFD), 2007 WL 2815068, at *2 (D. Conn. Sept. 26, 2007) (citation omitted). "The district court may also choose to modify the subpoena instead of fully quashing it." *Id.* (citing Fed. R. Crim. P. 17(c)(2)).

[1] Walsh describes the first meeting as a "proffer session" and the subsequent meetings as "government interviews." (*Id.*)

**Walsh's Notes are the Proper Subject of a Rule 17(c) Trial Subpoena**

In reliance on *United States v. Nixon*, 418 U.S. 683 (1974), K&F claims that the documents sought by the Trial Subpoena are beyond the scope of Rule 17(c) because: (1) they are inadmissible hearsay, and (2) they can be used at trial only to impeach Koppelman in the event he testifies. (Mot. to Quash, at 5). This argument fails for at least three reasons.

First, the test formulated by Judge Weinfeld in *United States v. Iozia*, 13 F.R.D. 335, 338 (S.D.N.Y. 1952), and adopted by the Supreme Court in *Nixon*, addresses what must be shown to require the production, pursuant to a Rule 17(c) subpoena, of documents to a party for its inspection *prior to trial*. It is clear from the Supreme Court's discussion of the *Iozia* test that its application is limited to determining whether *pre-trial* production and inspection of the subpoenaed documents is warranted:

> Under this test, *in order to require production prior to trial*, the moving party must show: (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'

*United States v. Nixon*, 418 U.S. at 699-700 (footnote omitted) (emphasis added). That test is largely inapplicable here because defendants do not seek to require the production and inspection of the requested documents prior to defendants' trial which is scheduled to begin on March 13, 2012. It would, therefore, be illogical under the circumstances to enforce the Trial Subpoena only upon defendants' showing that they "cannot properly prepare for trial without such production and inspection in advance of trial." We also note that K&F does not – and cannot – contend that the Trial Subpoena was not issued in good faith or that it lacks reasonable specificity. Indeed, Walsh readily identified only eight documents within the scope of the Trial Subpoena's demand.

Second, the "evidentiary" prong of the *Nixon* test – which is the only one truly at issue here – does not apply to trial subpoenas issued by defendants to third parties. Indeed, *Iozia*, the acknowledged origin of the *Nixon* test, and *Bowman Dairy, Co. v. United States*, 341 U.S. 214 (1951), the only prior Supreme Court decision concerning the scope of Rule 17(c), both involved a defendant's subpoena to the government. In *Nixon*, the Supreme Court noted that the "evidentiary" requirement of *Bowman Dairy Co.* and *Iozia* may "not apply in its full vigor when the subpoena duces tecum is issued to third parties rather than to government prosecutors," but found it unnecessary to decide the issue under the circumstances. *Nixon*, 481 U.S. at 699 n.12. Consequently, although *Nixon* is often cited as the standard governing Rule 17(c) subpoenas

generally, its application to subpoenas issued by a defendant to a third party has been erroneously presumed.

This presumption led Judge Kaplan to state recently, in evaluating a defendant's Rule 17(c) subpoena request, that:

> it is vitally important never to let the frequent repetition of a familiar principle obscure its origins and thus lead to mindless application in circumstances to which the principle never was intended to apply. … *Nixon* should not so readily be divorced from the concerns that produced it.

*United States v. Stein*, 488 F. Supp. 2d 350, 365 (S.D.N.Y. 2007). Even more recently, another court in this circuit held that the *Nixon* standard

> is inappropriate where production is requested by (A) a criminal defendant; (B) on the eve of trial; (C) from a non-party; (D) where the defendant has an articulable suspicion that the documents may be material to his defense.. A defendant in such a situation need only show that the request is (1) reasonable, construed as 'material to the defense,' and (2) not unduly oppressive for the producing party to respond.

*United States v. Tucker*, 249 F.R.D. 58, 66 (S.D.N.Y. 2008). The Trial Subpoena, which seeks the production of only eight documents concerning a key government witness, clearly satisfies this standard.

Third, Walsh's notes are the proper subject of a Rule 17(c) subpoena eve if *Nixon*'s "evidentiary" requirement is found applicable to the Trial Subpoena. K&F mistakenly claims that the subpoenaed notes cannot satisfy this standard because they are necessarily "inadmissible hearsay." (*See* Mot. to Quash, at 5). This argument fails to recognize the possibility, or even the likelihood, that the notes may be offered for a purpose other than for the truth of the statements described in them. For example, notes describing threats or inducements made by prosecutors may be offered as non-hearsay evidence of Koppelman's bias or motive to lie. K&F's additional claim that Rule 17(c) subpoenas cannot be used to obtain impeachment materials relies solely on cases in which such material was sought prior to trial, a circumstance not present here. In *Nixon*, the Supreme Court stated that "*[g]enerally*, the need for evidence to impeach a witness is insufficient to require its production *in advance of trial*." *Nixon*, 418 U.S. at 701-02 (emphasis added). This statement does not establish a rule of any sort, much less one that places impeachment material outside the scope of Rule 17(c) subpoena. If anything, *Nixon* recognizes that impeachment material is obtainable through a Rule 17(c) subpoena, just not necessarily "in advance of trial." *See id.* (citing *United States v. Carter*, 15 F.R.D. 367, 371 (D.D.C. 1954) (allowing inspection of impeachment materials obtained by Rule 17(c) subpoena after government witnesses testified). *See also United States v. James*, No. 02CV0778 (SJ), 2007 WL

914242, at *29 (E.D.N.Y. March 21, 2007) (same); *United States v. LaRouche Campaign*, 841 F.2d 1176, 1177 (1st Cir. 1988) (finding no abuse of discretion in district court's order concerning production of potential impeachment material pursuant to a Rule 17(c) subpoena). Consequently, it is clear that impeachment materials are properly obtained by a Rule 17(c) trial subpoena. It is within this Court's complete discretion as to when such materials must be produced.

**The Attorney Work Product Doctrine Does Not Bar the Production of Walsh's Notes Because Defendants Have a Substantial Need for the Documents and Their Production Does Not Prejudice Walsh's Client**

Although K&F argues that the notes should be protected as attorney work product, its brief ignores a line of cases where courts have ordered attorneys to turn over their notes of meetings between clients and law enforcement agents based on a showing of substantial need. *See e.g. United States v. Marcus Schloss & Company*, 1989 WL 62729, at *4 (S.D.N.Y. June 5, 1989); *United States v. Weissman*; 1995 WL 244522 (S.D.N.Y. April 26, 1995); *Crosby v. City of New York*, 269 F.R.D. 267 (S.D.N.Y. 2010). In *Marcus Schloss*, the court held that, in a criminal case, "defense counsel is entitled to examine the notes of interviews with prosecutors or government agents kept by attorneys for an important government witness, where disclosure causes no prejudice to the witness" and the notes do not contain or are excised of "expressions of the attorney's thoughts or beliefs." The court also noted that "substantial need" should be defined more flexibly in criminal matters than in civil matters because a defendant's liberty is at stake. *Marcus Schloss* at *3-4.

Defendants here clearly have"substantial need" for Walsh's notes. Koppelman is a key government witness. There are no verbatim transcripts of his meetings with the government and no record at all of what prosecutors told his attorney during three telephone conversations with her. Walsh's notes highlight statements by Koppelman and by the government that may be of critical importance to the defense and that are not obtainable from another source. With respect to the meeting notes, a comparison of the different sets of notes may reveal that Koppelman told government agents different things at different times, or that the agents selectively recorded or incorrectly recorded his statements. Any "possible inconsistencies or contradictions" in Koppelman's statements "are of obvious interest" to the defendants, and this interest establishes the defense's substantial need the notes. *Marcus Schloss* at *3. Furthermore, Walsh's notes will shed light on what happened at the meetings and during the three telephone conversations, including any threats or promises made to him by the government. All this information is potentially crucial evidence for impeaching Koppelman. The fact that the federal agents present at the meetings are available as witnesses does not help the defense because the defense seeks information not recorded in the agents' notes. There is no better way to learn what was said at the meetings and during the telephone conversations than to review Walsh's contemporaneously recorded notes.

Finally, disclosure of the notes would not prejudice Koppelman because the government *already knows* what statements Koppelman has made and what information it has provided to or exchanged with Walsh. Moreover, requiring the production of Walsh's notes will not set a precedent that chills attorney-client relationships because the meetings between Koppelman and the government, and Walsh's telephone conversations with prosecutors, were not privileged attorney-client meetings.

Relying on *United States v. Jacques Dessange, Inc.*, 2000 WL 310345 (S.D.N.Y., March 27, 2000), and *United States v. Arias*, 373 F. Supp. 2d 311 (S.D.N.Y. 2005), K&F argues that Walsh's notes necessarily constitute "opinion" work product because they are not a "verbatim transcript" of statements made by Koppelman or by the government during her meetings and conversations with the government. (Mot. to Quash at 10). K&F further contends that the Court can reach this conclusion based solely on the content of Walsh's affirmation. (Mot. to Quash, at 10). K&F is wrong on both points, however, because of material differences between the attorney representations accepted by the court in *Jacques Dessange, Inc.* and *Arias*, and those made by Walsh regarding the documents to be produced pursuant to the Trial Subpoena.

For example, in *Jacques Dessange, Inc.*, the court found that the subpoenaed notes were opinion work product based on the proffer of the attorney for a cooperating witness that her notes consisted of:

> summaries of what she deemed to be the key areas discussed; "flags" as to topics she wished to pursue with her client in private; and a selective recording of statements made by her client ...

2000 WL 31045, at *3. The court in *Arias* reached the same conclusion based on the representation of the attorney for a cooperating witness that his notes were "'not a verbatim transcript of the interviews,' but rather 'notes ... that I, using my own legal analysis, determined were important to memorialize in order to properly counsel my client ... [which] reflect my impressions and beliefs." *Arias*, 373 F. Supp. 2d 311, 312 (S.D.N.Y. 2005).

Here, in contrast, Walsh vaguely describes her notes of the four meetings with the government, in the first instance, as "reflect[ing] my own selective description of only certain portions of the interviews." (Walsh Aff. at ¶ 9). Similarly, she describes her notes of her three telephone conversations with the government as "contain[ing] a selective description of the information given by, or exchanged with, the government." (*Id.*). But a "description," whether selective or not, of any portion of an interview, or of information exchanged in a telephone conversation can, by definition, do nothing more than recount, perhaps in abbreviated form, the statements made by the participants in the interview or phone call. *See United States v. Weissman*, 1995 WL 244522, at *9-*11 (discussing distinction between notes that are merely summaries of statements and those that contain "explicit mental impressions, conclusions, opinions or legal theories of the attorney'). Such a "description" cannot be magically

transformed into a conclusion or opinion simply because an attorney decided it should be recorded. *See Weissman*, 1995 WL 244522, at *11; *see also Crosby v. City of New York*, 269 F.R.D. 267, 269-70 (S.D.N.Y. 2010) (an attorney's memorandum summaries of an interviewee's statements are "factual work product subject to disclosure on a demonstration by plaintiffs of substantial need and undue hardship"). Although Walsh adds that her notes of the government interviews (but not of the telephone conversations) also contain, among other things, "notations reflecting my own questions, conclusions, and opinions on various issues that, in my mind, arose during the interview sessions," (*id.*), her affirmation does not suggest that these "notations" are somehow inseparable from the factual summaries also contained in her notes.

**Conclusion**

For the foregoing reasons, Walsh's motion to quash the defendants' subpoena must be denied.

Respectfully submitted.

By: /s/Susan R. Necheles
Susan R. Necheles
Hafetz Necheles & Rocco
500 Fifth Avenue, 29th Floor
New York, New York 10110
Telephone: (212) 997-7595
Facsimile: (212) 997-7646
*Attorney for Pedro Espada, Jr.*

/s/ Russell Gioiella
Russell Gioiella
LITMAN ASCHE & GIOIELLA
140 Broadway
New York, New York 10005
Telephone: (212) 809-4500
Facsimile: (646) 607-9643