IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>PEDRO ESPADA, JR., et al | No: 10-CR-985 (FB) |

## RESPONSE TO DEFENDANT ESPADA'S LETTER IN OPPOSITION OF PRIYA CHAUDHRY'S MOTION TO QUASH TRIAL SUBPOENA ISSUED TO PRIYA CHAUDHRY, ESQ.

Priya Chaudhry, Esq. ("Counsel") respectfully submits this Response to the March 5, 2012, letter filed by Hafetz, Necheles & Rocco, attorneys for defendant Pedro Espada, Jr., ("Espada"), in opposition ("Opposition") of Counsel's Motion to Quash, filed March 1 ("Motion").

Espada argues that Counsel's Motion should be denied for two reasons: 1) he suggests that he has a substantial need to see Counsel's notes, even though he has the government's reports and agent's notes for those meetings, and that this purported substantial need should trump the bar that otherwise protects work product privileged material and 2) he suggests that disclosure of the notes will not prejudice Maduro,

Counsel's client. Neither of these arguments has any merit. Therefore, this Court should quash the Subpoena.[1]

## ARGUMENT

### The Government's Rule 3500 Production Was Voluminous and Detailed; Espada Can Make No True Claim To Substantial Need

As discussed extensively in Counsel' Motion, Espada cannot seriously claim that after the Government's enormous Rule 3500 production, he still requires Counsel's Notes. Nor can Espada cite any case where such thorough production was made to the defense and a court nonetheless ordered disclosure of attorney work-product. This is because there is none. By its very terms, Rule 26(b)(3) has been satisfied here.

### Espada Cannot Base His Request for Counsel's Notes on Speculation Alone.

In his Opposition, the only reason Esapda gives for demanding Counsel's Notes is that "A comparison of the different set of notes *may* reveal that Maduro told the government agents different things at different times, or that the agents selectively recorded or incorrectly recorded her statement."[2] Having acknowledged, as he must, that he has received all of the government's notes of its meetings with Maduro already, Espada only speculates that Counsel's Notes may aid him in impeaching Maduro or an agent here. This rank speculation is insufficient as a basis for demanding the protected notes under the law of this Court and in this Circuit.

---

[1] Espada has also served the law firm Kostelantz & Fink ("K&F") with a similar subpoena and K&F has likewise moved to quash that subpoena. *See* ECF Document 105. To the extent that any arguments made by K&F in support of its motion to quash are applicable here, Counsel adopts those arguments.

[2] Opposition at 3. (emphasis mine)

2

In *United States v. St. John*,[3] the Second Circuit held that a criminal defendant is not entitled to the attorney notes of a cooperating witness based on mere speculation. The Court stated, "Defendants' claim that they were entitled to notes taken by attorneys at a proffer session for cooperating witnesses is equally unavailing. *Defendants only speculate that these notes reflect inconsistent statements by cooperating witnesses*. Thus, the district court did not abuse its discretion in finding the notes to be protected work product."[4]

Further, in this Court's decision in *United States v. James*[5] the Court rejected a criminal defendant's speculation that the cooperating witness' attorney's notes may provide a basis for impeachment and held that this speculation does not overcome the work product privilege:

> Defendants' only justification for production of the notes is that they need those documents to impeach [the attorney's clients] when they testify. While is it 'understandable that [they] seek all possible material that may be of use to impeach [these] important trial witness[es], this desire alone is an insufficient ground for compelled disclosure of this kind of privileged material. Moreover…the need for impeachment material is met by the government's compliance with 18 USC § 3500…Accordingly, this Court subscribes to the logic and reasoning behind the decisions in *Arias* and *Dessange* and holds that an attorney's notes taken during proffer sessions with the government are undiscoverable absent a showing of need tha[t] has not been made here.[6]

The matter before this Court is indistinguishable from *James* and this Court should again follow *Arias, Dessange,* and *James*, and hold that Counsel's Notes are undiscoverable.

---

[3] 267 Fed.Appx. 17 (2d Cir., February 22, 2008)
[4] *Id* at 22 (emphasis mine)
[5] 2007 WL 1579980 (EDNY May 31, 2007)
[6] *Id* at *2-*3

3

### **Ms. Maduro Would Be prejudiced By Disclosure Because She Still Faces Jeopardy.**

Espada incorrectly contends that Maduro would not be prejudiced by forced disclosure of her work product privilege. Indeed, for at least three reasons, Maduro would be prejudiced. First, as noted in Counsel's original Motion, Counsel represents Maduro in the government's investigation of Soundview Health Center and Espada pending in the Eastern District of New York. Though Maduro has entered into a Non-Prosecution Cooperation Agreement ("Agreeement") with the U.S. Attorney's Office for the Eastern District, her obligations under that agreement remain outstanding and therefore, the government's promise not to prosecute her cannot and has not been enforced yet. And more importantly, the Agreement here is limited only to statements Maduro made in the Grand Jury and in her January 24, 2012, meeting with the government—the Agreement does not confer full immunity upon her. Thus regarding those false statements, Maduro still stands in jeopardy with the government until it has determined that she has truthfully and completely complied with the agreement. As for any another conduct, Maduro still faces the prospect of potential prosecution in this District.

Second, the Agreement with the U.S. Attorney in this District does not bind any other government agency. The underlying conduct involves Espada's discussions with Maduro prior to her appearance in the Grand Jury; in these discussions, Espada essentially told Maduro what to say in the Grand Jury and Maduro then repeated those statements under oath to a Grand Jury sitting in this District. However, the location of the actual pre-Grand Jury discussion took place within the Southern District, in the

Bronx. Therefore, Maduro could theoretically face criminal charges for, *inter alia,* conspiracy to obstruct justice, in the Southern District of New York. The U.S. Attorney in that District is not bound by the Agreement.[7]

Third, Counsel also represents Maduro in a pending and stayed civil case filed by the New York Attorney General concerning substantially the same matters. If the privilege is pierced here, another adversary, the New York Attorney General, could have unfair access to Counsel's work product.

Espada claims that there is "long line of cases" in which attorneys have been forced to turn over their notes of meetings, but this is not true. Instead, only in very limited circumstances, including in two cases decided by the same judge, have courts enforced subpoenas calling for work product. In neither of those cases, unlike here, was there prejudice to the client by disclosure of her attorney's work product.

In *United States v. Marcus Schloss*,[8] while Judge Haight did order an attorney for a cooperating witness to turn over his notes to the defendant's attorney, he made clear that that decision "depends upon and arose from the particular circumstances presented."[9] In *Schloss,* the cooperating witness was a) no longer a target of an investigation, b) had been sentenced and served that sentence, c) had resolved his professional licensing problems, and d) there was no suggestion of pending litigation against him.[10] Based on this, Judge Haight found that there was "neither a showing nor suggestion that disclosure

---

[7] As this Court has already severed counts against Espada which involve conduct which took place in the Southern District, it is not hard to imagine that this potential jeopardy for Maduro is very real.
[8] 1989 WL 62729 (SDNY 1989)
[9] *Id* at 4.
[10] *Id* at *2.

of the interview notes of [witness'] attorneys would cause any prejudice to [witness.]"[11] This is simply not the case here. As stated above, Maduro is very much embroiled in ongoing criminal litigation surrounding the very topics covered in these notes, including litigation involving a separate government entity.

Importantly, noting that "[i]n the context of a criminal trial, courts properly consider possible prejudice to the witness represented by the attorney in question..."[12] Judge Haight found that if disclosure of the notes "would impact on the ability of defense counsel to represent his client both as a target, as an indicted defendant, and as a cooperating defendant not yet sentenced, who might be involved in another litigation because of it, were his notes allowed to be subpoenaed by other parties in a criminal case," there is prejudice to the client.[13] "The gravity of the invasion of [witness'] rights depends upon the prejudice to him if disclosure is made. Here, there is no prejudice."[14] Clearly, as Maduro still faces potential criminal charges and is involved in actual civil litigation against a separate government entity with the authority to investigate and prosecute criminal cases, Counsel's ability to represent her would be greatly impacted, and Maduro would be greatly prejudiced, if this Court sets aside the privilege. (*See also United States v. Triumph Capital Group, Inc. et al*, 2003 WL 23318898 D. Conn, quashing the exact subpoena issued here and finding that defense counsel's reliance on *Marcus Schloss* is misplaced because the cooperating witness still had both criminal and civil liability looming.)

---

[11] *Id.*
[12] *Id.*
[13] *Id* citing Judge Goettel's opinion in *United States v. Yonkers Contracting Company*, 87 Cr. 559 (GLG) (internal citations omitted).
[14] *Id* at 3.

6

Another major distinction between *Marcus Schloss* and Maduro's case is the extent of the government's Rule 3500 production, which Judge Haight regarded as important in his finding that the defendant there established a substantial need for the notes. In *Marcus Schloss*, the government's production was "pretty sparse to begin with,"[15] but here the EDNY has made a huge 3500 production, including over 24 pages of notes and 302s from one of the meetings alone.

Further, it is important to note that the *Marcus Schloss* decision is over twenty-years old and has not been followed in any case by any court in this Circuit where the facts are the same. Instead, all of the courts which have considered the issue in *Marcus Schloss*—a criminal defendant seeking the attorney notes of a testifying cooperating witness—have ruled against production of the attorney notes.

Espada also cites *United States v. Weissman*[16], and *Crosby v. City of New York*[17], in his "line of cases" where attorneys have been ordered to turn over their notes, but neither of these cases is relevant to the issues here. In *Weissman*, the party sought notes of <u>other</u> attorneys who had been present at a joint defense meeting in order to establish his defense and own privilege *and* there is no underlying witness/client/defendant who was in danger of prejudice by such a production. *Crosby* is equally inapposite—there the defendants sought notes of the Manhattan DA's Office to establish a civil rights violation against them. Again, there was no underlying witness/client/defendant who faced prosecution and therefore no prejudice that is relevant to the issues before this Court.

### The Second Circuit agrees that Counsel should not be put on a potential witness list against her own client

---

[15] *Id.*
[16] 1995 WL 244522 (SDNY April 26, 1995)
[17] 269 FRD 267 (SDNY 2010)

7

In his Opposition, Espada states that "although Chaudhry warns that she potentially may be called as a witness against her client, attorneys are *always* potential witnesses regarding conversations that are not privileged."[18] While this may be true for the crime-fraud exception, that analysis is not relevant here. In short, Espada misstates the law.

In *In re Grand Jury Subpoena Dated October 22, 2001*,[19] the Second Circuit held that the work product privilege barred a subpoena requiring an attorney to testify in a grand jury against her own client regarding statements her client made to the IRS in the attorney's presence. There, the government contended that the client's statements to the IRS, made in the presence of the attorney, recounted past crimes committed by the client.[20] The government wanted the attorney to testify about those statements. No notes were subpoenaed.

In upholding the fundamental reasoning behind the work product privilege, the Court held:

> It is one thing for a client to recognize that if he commits a crime in his attorney's presence, the attorney may be compelled to testify to the criminal acts she witnessed. It seems to us quite different for the client to accept that if he hires an attorney to represent him with respect to his past commission of a crime, the attorney may be compelled to testify against him as to admissions (or denials) he made in his attorney's presence that tend to prove his guilt with respect to that past crime. We see no reason why the work product privilege is not properly invoked to bar the compulsion of that testimony. It falls comfortably within the black letter definition of work product. Furthermore, it implicates policy concerns relating to the lawyer-client relationship. The work product privilege establishes a zone of privacy for an attorney's preparation to represent a

---

[18] Opposition at 4.
[19] 282 F.3d 156 (2d. Cir. 2002)
[20] The government also accused the client of committing a crime in the attorney's presence, which the Second Circuit held would not be protected by the work-product privilege.

8

client in anticipation of litigation. See Hickman, 329 U.S. at 510-11, 67 S.Ct. 385; United States v. Adlman, 134 F.3d 1194, 1196 (2d Cir.1998). *For the attorney to be subpoenaed to testify to the observations made in the course of that preparation in order to help the putative adversary prove the offense as to which the attorney was providing representation would do substantial injury to the values that justify the work product doctrine.*[21]

Clearly if the Second Circuit found that the work product privilege prevented a lawyer from testifying about statements her client made in her presence to a third party, then *a fortiori*, that same privilege protects Counsel's notes.

The Second Circuit further made clear that work product privilege extends to facts. The Court wrote, "First, the district court at one point intimated a view that the work product privilege may have no application to facts, as opposed to opinions and strategies. We believe this to be an overstatement….we see no reason why work product cannot encompass facts as well…We think the district court advanced an exaggerated view in suggesting that work product has no application to facts."[22]

---

[21] 282 F.3d at 160. (emphasis mine)
[22] *Id* at 161.

9

## CONCLUSION

For all the reasons stated above, Counsel respectfully urges that the Court quash the Subpoena.

Dated: March 19, 2012
      New York, New York

                                      Respectfully submitted,

                                      Priya Chaudhry (PC 3073)
                                      pchaudhry@chaudhrylaw.com
                                      Law Offices of Priya Chaudhry
                                      80 Pine Street, 33rd Floor
                                      New York, New York 10005

                                      Phone: 212.785.5550
                                      Fax:   212.785.5558

                                      Attorney for Evette Maduro