UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------x
UNITED STATES OF AMERICA,

    -against-                           **MEMORANDUM AND ORDER**
                                               10-CR-00985-1 (FB)

PEDRO ESPADA, JR.,

                  Defendant.

CONNIE ESPADA,

                  Third-Party Petitioner.

------------------------------------------------x

*Appearances:*
*For the Third-Party Petitioner:*          *For the United States:*
CONNIE ESPADA, *pro se*               KELLY T. CURRIE
115 Beechwood Drive                   Acting United States Attorney
Mamaroneck, NY 10543              Eastern District of New York
                                  271 Cadman Plaza East
                                  Brooklyn, New York 11201

                                By:    CLAIRE S. KEDESHIAN
                                          BRIAN MORRIS
                                          Assistant U.S. Attorneys

**BLOCK, Senior District Judge:**

      On August 6, 2014, Connie Espada ("Mrs. Espada") filed a *pro se* third-party petition pursuant to 21 U.S.C. § 853(n) in the above-captioned criminal case. In the petition, Mrs. Espada argues that she has an interest in the New York State pension account of her husband Pedro Espada, Jr. ("Mr. Espada") – which is subject to a preliminary order of forfeiture as a substitute asset of Mr. Espada – because she is listed

as a beneficiary under his pension plan. Mrs. Espada further argues that the preliminary order was entered in violation of Mr. Espada's Sixth Amendment rights.

On October 10, 2014, the government moved to dismiss Mrs. Espada's petition on the grounds that she (1) lacked standing, and (2) failed to state a claim under the criminal forfeiture statute. Because the government's motion relied on extrinsic evidence – namely Mr. Espada's retirement application and beneficiary designation forms – the Court gave notice to the parties that it was converting the government's motion into a motion for summary judgment pursuant to Federal Rule of Civil Procedure 12(d). *See* Mem. & Order, Docket Entry No. 337 (Aug. 18, 2015).

Mrs. Espada's constitutional claim can be readily dismissed since she may not, in the context of an ancillary proceeding, vicariously assert constitutional claims on Mr. Espada's behalf. *See, e.g., United States v. Porchay*, 533 F.3d 704, 710 (8th Cir. 2008) ("[The petitioner] was a third party to the forfeiture and has no standing to challenge the legality of the seizure under the Fourth Amendment."). However, for the reasons that follow, the Court concludes that Mrs. Espada has a separate legal interest in her husband's pension and that her interest vested prior to the government's. The Court therefore grants summary judgment in favor of Mrs. Espada and enters an amended order of forfeiture reflecting her interest in the pension.[1]

---

[1] The Court notes that, while Mrs. Espada may not raise constitutional challenges on behalf of Mr. Espada, she *could* raise constitutional challenges on her

# I.

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In determining whether a genuine issue of material fact exists, the Court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "[I]f the court determines that there are no genuine issues of material fact, but that the law is on the side of the nonmoving party, the court may grant summary judgment in favor of the non-moving party even though it has made no formal cross-motion." *Rodriguez v. Atria Sr. Living Grp., Inc.*, 887 F. Supp. 2d 503, 510 (S.D.N.Y. 2012) (internal quotation marks and citation omitted).

The following facts are uncontested.

## A.    Mr. Espada's Retirement and Indictment

On December 8, 2010, Mr. Espada – at that time a New York State Senator –

---

own behalf. *See, e.g, United States v. Totaro*, 345 F.3d 989, 997 (8th Cir. 2003) ("If this court were to deem forfeited the entire estate despite a valid claim of partial ownership by a third party . . . [i]t would . . . punish the third party, against whom no jury has returned a verdict of guilt, and may therefore raise constitutional questions of a whole different order."). Since Mrs. Espada does not raise any such constitutional challenges, the Court need not address any constitutional questions in this case. In any event, such questions would be academic in light of the Court's resolution of this proceeding. *See United States v. Leon*, 766 F.2d 77, 78 (2d Cir. 1985) ("[A] court should not reach constitutional issues when there are other, nonconstitutional grounds upon which it can resolve the case.").

applied to retire from the New York State Senate by submitting a signed Application for Service Retirement Form to the New York State and Local Retirement System ("NYSLRS"). *See* Tersago Decl., Ex. A. The application form stated that "[t]his application must be on file with the retirement system for at least 30 days but not more than 90 days before [the] retirement can become effective." *Id.* at 1.

Six days later, Mr. Espada was indicted in this case. Almost four weeks later, on January 12, 2011, he submitted a Retirement Option Election Form to NYSLRS, rendering his retirement effective. *See* Tersago Decl., Ex. B. In the form, Mr. Espada selected the "Joint Allowance – Full" pension plan, which provided that:

> I elect to receive a reduced lifetime retirement allowance, based on my life expectancy and the life expectancy of my beneficiary. If I die before my beneficiary, continue paying the same monthly amount to my beneficiary for life. If my beneficiary predeceases me, stop all payments at my death. *I understand that I cannot change my beneficiary after the last day of the month in which I retire.*

*Id.* at 1 (emphasis added). Mr. Espada designated Mrs. Espada as his beneficiary. *See id.* at 2. Per the terms of the form, the pension became payable "[on] the first day of the month following [his] retirement," i.e. on February 1, 2011. *Id.* at 1.

## B.    Mr. Espada's Conviction and Forfeiture Proceedings

On May 24, 2012 – about a year and a half after he was indicted – Mr. Espada was found guilty by a jury of four counts of stealing federal funds. On October 12, 2012, he pleaded guilty to an additional count of filing a false tax return. Pursuant to a plea

agreement, Mr. Espada agreed to forfeit both the proceeds he derived from his crimes and "substitute assets as defined in 21 U.S.C. § 853(p) [and] 18 U.S.C. § 982(b)." Letter in Response to Def't, Ex. 1 ("2012 Plea Agreement"), Docket Entry No. 303-1 (June 4, 2014), ¶ 10.

On June 14, 2013, Mr. Espada was sentenced on the theft of federal funds and false tax return counts. At that time, as part of the sentence, the Court entered an order of forfeiture in the amount of $368,088, representing proceeds derived from Mr. Espada's theft of federal funds. *See* Order of Forfeiture, Docket Entry No. 265 (June 18, 2013). This marked the first time the Court entered an order of forfeiture in Mr. Espada's case.

On January 23, 2014, the government moved to forfeit Mr. Espada's pension benefits as a substitute asset because "the United States has not been able to locate, obtain or collect the criminal proceeds of the defendant's offenses." Mot. in Supp. of Proposed Order of Forfeiture for Substitute Assets, Docket Entry No. 291 (Jan. 23, 2014), at 3-4. Consequently, on the same day, the Court entered a preliminary order forfeiting Mr. Espada's pension as substitute property pursuant to Federal Rule of Criminal Procedure 32.2(b)(2)(A) ("If the court finds that property is subject to forfeiture, it must promptly enter a preliminary order of forfeiture . . . without regard to

any third party's interest in the property.").[2] The preliminary order applied to "[a]ny and all pension funds, benefits, rights to disbursements, or other property held on behalf of, or distributed to [Mr. Espada] by the New York State and Local Retirement System, and all property traceable thereto." Preliminary Order of Forfeiture of Substitute Property, Docket Entry No. 292 (Jan. 23, 2014), at 2. The order required the government to publish notice on an official forfeiture website and also to provide written notice to "any person known or alleged to have an interest in the [substitute property]." *Id.* at 4.

It is not known how Mrs. Espada learned of the order, but she subsequently filed her *pro se* petition on August 6, 2014. Thereafter, on February 12, 2015, the Court requested clarification from the government about whether it intended to seek forfeiture of Mrs. Espada's future payments under the pension plan in the event her husband predeceases her. On March 2, 2015, the government informed the Court that it "is pursuing [the pension funds] without regard to whom any such obligations might become

---

[2] On December 13, 2013, the government separately sought to garnish the pension account to satisfy the $118,531 restitution order, which was entered by the Court on June 23, 2014 in conjunction with the forfeiture order. Since the restitution order takes priority over the order of forfeiture, the preliminary order of forfeiture applies only to that portion of the pension benefits "not subject to garnishment or which [is] otherwise unavailable for application to the restitution judgment." Preliminary Order of Forfeiture of Substitute Assets, Docket Entry No. 292 (Jan. 23, 2014), at 3; *see United States v. Cohan*, 988 F. Supp. 2d 323, 329 (E.D.N.Y. 2013) (Block, J.) (explaining district court's authority to assign priority between forfeiture and restitution).

payable in the future."[3]  Gov't's Letter, Docket Entry No. 327 (Mar. 2, 2015).

## II.

### A.    Statutory Framework Governing Forfeiture

For certain statutorily enumerated offenses – including the offenses for which Mr. Espada was convicted – criminal forfeiture is a mandatory component of the defendant's sentence.  *See* 28 U.S.C. § 2461.  Forfeitable property is divided into two categories: offense property and substitute property.  *See* 21 U.S.C. § 853(a)(1), (p).  Offense property is "any property constituting, or derived from, any proceeds the person obtained, directly or indirectly," as the result of the crime.  *Id.* § 853(a)(1).  In contrast, substitute property is "any other property of the defendant."  *Id.* § 853(p)(2).  Unlike offense property, substitute assets can only be forfeited after the government has made a threshold showing that the offense property (1) "cannot be located upon the exercise of due diligence;" (2) "has been transferred or sold to, or deposited with, a third party;" (3) "has been placed beyond the jurisdiction of the court;" (4) "has been substantially diminished in value;" or (5) "has been commingled with other property which cannot be divided without difficulty."  *Id.* § 853(p)(1).

Two provisions of the criminal forfeiture statute are of particular relevance to this

---

[3] On March 9, 2015, following the government's clarification, the Court sent Mrs. Espada an application to determine whether she would be eligible for pro bono counsel.  *See* Letter to Mrs. Espada, Docket Entry No. 328 (Mar. 9, 2015).  On May 13, 2015 – not having heard from her – the Court gave her until June 15 to either obtain a lawyer or to qualify for the assignment of counsel.  She has not done so, and remains a *pro se* litigant.

case. First, under the "relation back" provision of § 853(c), "[a]ll right, title, and interest in property described in subsection (a)" – i.e. offense property – "vests in the United States upon the commission of the act giving rise to forfeiture under this section," i.e. at the time of the commission of the crime. *Id.* § 853(c); *see Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 627 (1989) ("Section 853(c) reflects the application of the long-recognized and lawful practice of vesting title to any forfeitable assets, in the United States, at the time of the criminal act giving rise to forfeiture."). The "relation back" provision does not specify when the government acquires an interest in *substitute* property. *See United States v. Egan*, No. 10-CR-191, 2015 WL 4772688, at *4 (S.D.N.Y. Aug. 13, 2015) ("[T]here is no explicit relation-back provision for substitute assets in § 853 . . . .").

Second, under the protective order provision of § 853(e), the court "may enter a restraining order or injunction . . . to preserve the availability of property described in subsection (a)" – i.e. offense property – upon either (1) the filing of the indictment, or (2) a judicial determination prior to indictment that the offense property will otherwise be made unavailable. *See* 21 U.S.C. § 853(e)(1)(A)-(B). The court may also enter a temporary restraining order against offense property prior to indictment if the court determines that there is probable cause that the property would be subject to forfeiture. *See id.* § 853(e)(2); *cf. United States v. Cosme*, __ F.3d __, 2015 WL 4716437, at *6 (2d Cir. Aug. 10, 2015) (noting that pretrial restraints of property must comport with the

Fourth Amendment).  Like the "relation back" subsection, the protective order provision does not explicitly specify whether substitute property may be restrained prior to trial. *See United States v. Jarvis*, 499 F.3d 1196, 1199 n.3 (10th Cir. 2007) ("Section 853(e) does not . . . explicitly provide for pre-trial restraint of § 853(p) substitute property.").

## B.      Ancillary Proceedings in Forfeiture Proceedings

Once the government shows that a defendant's offense property is unavailable for any of the five reasons enumerated by § 853(p)(1), the Court is required to enter a preliminary order forfeiting substitute property without regard to any third-party interests in the property.  *See* 21 U.S.C. § 853(p)(2); FED. R. CRIM. P. 32.2(c).  A third party may then petition the court to adjudicate her alleged interest in forfeited property via a post-trial ancillary proceeding.  *See* 21 U.S.C. § 853(n)(2).  The purpose of this ancillary proceeding is "to amend orders of forfeiture and apportion assets when one or more third parties claim an interest in the property to be forfeited."  *Willis Mgmt. (Vermont), Ltd. v. United States*, 652 F.3d 236, 246 (2d Cir. 2011).

In order to advance a claim in an ancillary proceeding, a third-party petitioner "must first establish [her] standing to challenge the forfeiture order by demonstrating a 'legal interest' in the forfeited property."  *United States v. Watts*, 786 F.3d 152, 160 (2d Cir. 2015) (quoting 21 U.S.C. § 853(n)(2)).  Federal law does not define what constitutes a "legal interest."  Rather, state law (in this case, the law of New York) determines whether a petitioner has a legal interest in the property at issue.  *See Willis Mgmt.*, 652

F.3d at 242.

Once a petitioner has established she has standing, she must then establish by a preponderance of the evidence either that (a) her interest in the property was "vested in the petitioner rather than the defendant or was superior to the [defendant's interest] at the time of the commission of the acts which gave rise to the forfeiture of the property," 21 U.S.C. § 853(n)(6)(A), or (b) she is a "bona fide purchaser for value," *id.* § 853(n)(6)(B).

## III.

The government argues that Mrs. Espada's petition should be dismissed because (1) she has no legal interest in Mr. Espada's pension benefits and therefore has no standing to bring the petition, and (2) even if she had standing, she has failed to satisfy the requirements of 21 U.S.C. § 853(n)(6)(A).[4] The Court will address these arguments in turn.

### A.      Whether Mrs. Espada Has Standing

Mrs. Espada asserts that she has a legal interest in Mr. Espada's pension benefits because she is listed as a pension beneficiary and will therefore receive his monthly pension payments in the event of his death.  If her beneficiary interest was freely revocable by Mr. Espada then she would lack standing to bring this petition, since it is

_____

[4] The government also argues that her petition fails to satisfy the requirements of 21 U.S.C. § 853(n)(6)(B) because she is not a "bona fide purchaser for value." Since Mrs. Espada makes no such claim in her petition, the Court does not address this argument.

well-settled that revocable beneficiaries possess only expectancy interests and not vested legal rights under New York law.  *See, e.g., Wornick v. Gaffney*, 544 F.3d 486, 490 (2d Cir. 2008) ("Under New York law, the revocable beneficiary of a life insurance policy has a mere expectancy or an inchoate right in the policy depending entirely upon the will of the insured.") (internal quotation and punctuation marks omitted) (quoting *Davis v. Modern Indus. Bank,* 279 N.Y. 405, 410, 18 N.E.2d 639  (1939)).

Here, however, Mr. Espada has elected to receive his pension benefits under a "Joint Allowance" plan, under which Mrs. Espada's beneficiary interest became irrevocable at the end of January 2011, the month on which his retirement became effective.  *See* Tersago Decl., Ex. B, at 1 ("I understand that I cannot change my beneficiary after the last day of the month in which I retire.").  From that time on Mrs. Espada had a legal interest in Mr. Espada's pension benefits under New York law.[5]  *See Kliamovich v. Kliamovich*, 85 A.D.3d 867, 870, 925 N.Y.S.2d 591 (2nd Dep't 2011) ("The interest of an irrevocable beneficiary in a life insurance policy cannot be divested without the beneficiary's consent."); *see also Ruckenstein v. Metro. Life Ins. Co.*, 263 N.Y. 204, 207, 188 N.E. 650 (1934) ("[I]f a beneficiary has a vested interest in the

---

[5] The government cites *Flanagan v. O'Dwyer*, 197 Misc. 5, 9, 94 N.Y.S.2d 162 (N.Y. Sup. Ct. 1950), for the proposition that "[i]nstead of regarding designation of the beneficiary as a disposition of property, we regard it as the mere naming of a person for whose benefit a contract is made."  *Flanagan*, however, concerned a life insurance policy under which the policyholder could freely change the beneficiary designation.  *See id.* at 7-8 (noting that the policyholder changed the beneficiary twice after making the initial beneficiary designation).  As such, *Flanagan* is easily distinguishable from this case.

contract of insurance, the insured cannot surrender the policy so as to defeat the rights of the beneficiary thereunder, without her consent."). Accordingly, Mrs. Espada has standing to bring this petition.

**B.      Whether Mrs. Espada Has Satisfied the Requirements of § 853(n)(6)(A)**

The government next argues that Mrs. Espada's interest in the pension is necessarily inferior to Mr. Espada's because she will only receive benefits upon his death. This argument misreads the statutory text. Under 21 U.S.C. § 853(n)(6)(A), a third-party petitioner must demonstrate that she has a legal interest in the property that is *either* "superior to any right, title, or interest of the defendant" *or* "vested in the petitioner rather than the defendant." Thus, a third party's legal interest in forfeited property need not be superior to the defendant's. Rather, it is sufficient that the petitioner has a separate and distinct legal right to the property that is vested in *her* and her alone.

While Mrs. Espada's interest in the pension fund is inferior to Mr. Espada's, she nonetheless retains a separate interest in *future* pension payments, an interest that is vested in her rather than in Mr. Espada. To use an analogy, her interest is akin to a remainderman's interest in real property following a life estate: it may be "inferior" insofar as the remainderman cannot use the property *now*, but it is nevertheless a distinct interest vested in the remainderman and not the life estate holder, which would not be extinguished if the government forfeited the property. *See Pacheco v. Serendensky*, 393

F.3d 348, 355 (2d Cir. 2004) (concluding that the government's forfeiture of real property owned by the defendant in joint tenancy extinguished only the defendant's interest and not the joint tenant's).

This does not resolve the matter, however, because Mrs. Espada must also demonstrate that her interest in the pension benefits vested before the government acquired its interest in the substitute property. *See* 21 U.S.C. § 853(n)(6)(A); *United States v. Watts,* 786 F.3d 152, 166 (2d Cir. 2015) ("[A] third party may prevail under § 853(n)(6)(A) only by establishing that he had a legal interest in the forfeited property *before* . . . the government's interest vested." (internal quotation marks omitted) (emphasis in original)); *United States v. Jennings*, No. 5:98-CR-418, 2007 WL 1834651, at *4 (N.D.N.Y. June 25, 2007) ("To determine whether the [third-party petitioner] is entitled to . . . forfeited substitute assets under 21 U.S.C. § 853(n)(6)(A), it is necessary to analyze when the assets vested in the U.S. Government."). This is a question of some complexity, since – in contrast to offense property – the relation back provision of § 853(c) does not explicitly say when the government's interest in substitute property vests, and the Second Circuit has yet to address this precise question. *See Egan*, 2015 WL 4772688, at *5 (noting lack of controlling authority in the Second Circuit).

Two lines of cases are instructive in resolving this question. In the first, courts have analyzed whether the government may restrain substitute property prior to trial under the criminal forfeiture statute and under the analogous forfeiture provisions of the

13

RICO statute. In the second, courts have considered when the government's interest in substitute property vests in the context of a third-party ancillary proceeding. Although the present case only involves the latter situation, there is analytical value in exploring both lines of cases since they are conceptually linked and drive the analysis in determining whether the government acquired any interest in Mrs. Espada's potential future pension benefits in this case.

1.  Cases concerning the pre-trial restraint of substitute property

    a.  *Pre-trial restraint under the criminal forfeiture statute*

Five of the six circuit courts that have addressed the issue have concluded that, since § 853(e) specifies only that *offense* property may be restrained prior to trial, the pre-trial restraint provision of the criminal forfeiture statute does not apply to substitute property. Circuits disagree, however, on when the government *could* restrain such assets. The Fifth and Ninth Circuits have held that § 853(e) prohibits the pre-trial restraint of substitute assets without specifying when such assets might be restrained. *See United States v. Ripinsky*, 20 F.3d 359, 365 (9th Cir. 1994) ("21 U.S.C. § 853 does not authorize the pretrial restraint of substitute assets . . . ."); *United States v. Floyd*, 992 F.2d 498, 501 (5th Cir. 1993) ("[T]he statute . . . plainly states what property may be restrained before trial. Congress made specific reference to the property described in § 853(a), and that description does not include substitute assets.").

The Eighth Circuit concluded that the government cannot restrain substitute

property until after conviction. *See United States v. Field*, 62 F.3d 246, 249 (8th Cir. 1995) ("[S]ection 853(e) authorizes *pretrial* restraint only of property associated with the crime, though subsection (p) allows the government to reach substitute assets *after* conviction." (emphases in original)). One district court in the Second Circuit has reached the same conclusion. *See United States v. Kramer*, No. 06-CR-200, 2006 WL 3545026, at *6-8 (E.D.N.Y. Dec. 8, 2006) ("[T]he Government has no colorable property interest in substitute assets of a defendant at least until the time of conviction.").

The Sixth and Tenth Circuits have gone further, holding that the government cannot restrain substitute property until the court has actually entered an order forfeiting the defendant's substitute property. *See United States v. Parrett*, 530 F.3d 422, 431 (6th Cir. 2008) ("21 U.S.C. § 853 does not provide authorization for the federal government to place restraints on substitute property prior to entry of an order of forfeiture."); *Jarvis*, 499 F.3d at 1204 ("[T]he United States does not have a ripened interest in § 853(p) substitute property until (1) after the defendant's conviction and (2) the court determines the defendant's § 853(a) forfeitable property is out of the government's reach for a reason enumerated in § 853(p)(1)(A)-(E).").

The Fourth Circuit stands alone as the only circuit court to hold that § 853(e) authorizes the pre-trial restraint of substitute property, simply citing to its previous holding and rationale in *In re Billman,* 915 F.2d 916, 921 (4th Cir. 1990), a case which upheld the pre-trial restraint of substitute property under RICO. *See United States v.*

*Bollin*, 264 F.3d 391, 421 (4th Cir. 2001).

In addition, two district courts outside the Second Circuit have also held that § 853 authorizes the pre-trial restraint of substitute property, reasoning that such a rule would further the legislative intent underlying the statute. *See United States v. Scardino*, 956 F. Supp. 774, 778 (N.D. Ill. 1997) ("Reading the . . . restraint provisions in a more restrictive manner . . . would undermine the Government's legitimate interests at the inception of forfeiture proceedings . . . to ensure that the property not be sold, destroyed, or used for further illegal activity prior to the forfeiture judgment." (internal quotation marks and citations omitted)); *United States v. Schmitz*, 153 F.R.D. 136, 141 (E.D. Wis. 1994) ("[T]he language and design of the statute supports the use of prior restraint or seizure to assure the availability of all assets subject to forfeiture, including substitute assets. . . . To conclude otherwise would eviscerate the intent of the criminal forfeiture statute.").

b.    *Pre-trial restraints under the RICO statute*

Courts have considered whether substitute assets may be restrained prior to trial under the forfeiture provisions of the RICO statute – provisions that are identical in all material respects to those of the criminal forfeiture statute. *See United States v. Awad*, 598 F.3d 76, 79 (2d Cir. 2010) ("[T]he statutory provision governing forfeitures under RICO and criminal forfeiture orders imposed pursuant to § 853 are so similar in legislative history and plain language as to warrant similar interpretation." (internal

quotation marks omitted)).

In *United States v. Gotti*, 155 F.3d 144 (2d Cir. 1998), the Second Circuit concluded that "the unambiguous language of [the RICO forfeiture provisions] provides no authority for [pre-trial] restraints." *Id.* at 150. In so holding, the Second Circuit adopted the Fifth Circuit's reasoning in *Floyd* – concerning the criminal forfeiture statute – and concluded that the RICO statute "plainly states what property may be restrained before trial . . . and that description does not include substitute assets." *Id.* at 149 (quoting *Floyd*, 992 F.2d at 502). While the *Gotti* court did not explicitly state when the government *could* restrain substitute property, it quoted with approval RICO's legislative history, which stated that the statute "authoriz[es] the court to order the defendant to forfeit substitute assets when his property originally subject to forfeiture has been made unavailable *at the time of conviction*." *Id.* (quoting Pub. L. No. 98-473, § 302, 1984 U.S.C.C.A.N. (98 Stat.) 3182, 3380-1) (emphasis in original).

The Third and Eighth Circuits have come to the same conclusion. *See United States v. Riley*, 78 F.3d 367, 371 (8th Cir. 1996) ("[T]he [RICO] statute does not authorize preconviction restraints on substitute assets."); *In re Assets of Martin*, 1 F.3d 1351, 1356 (3d Cir. 1993) ("[T]he statute does not authorize either pre-conviction or pre-indictment restraints to preserve the availability of . . . substitute assets.").

In contrast, the Fourth Circuit held in *Billman* that the government *may* restrain substitute assets prior to trial under the RICO statute. *See* 915 F.2d at 921. In so

holding, the Court noted that Congress intended the statute to be "liberally construed to effectuate its remedial purposes." *Id.* (quoting *Russello v. United States*, 464 U.S. 16, 26-27 (1983)). Accordingly, it reasoned that "when, as here, the defendant has placed [the proceeds of the crime] beyond the jurisdiction of the court, [the pre-trial restraint provisions] must be read . . . to preserve the availability of substitute assets pending trial. In this way the purpose of [the RICO statute] can be attained." *Id.*

2.    Cases concerning post-conviction ancillary proceedings

Some courts have also considered when the government acquires its interest in substitute property in the context of ancillary third-party proceedings, like the one at issue in this case. The Sixth Circuit – applying its prior analysis in *Parrett*, which dealt with the pre-trial restraint provisions of § 853(e) – concluded that the government's interest in substitute assets does not vest until after the defendant is convicted and the court has determined that the defendant's offense property is unavailable. *See United States v. Erpenbeck*, 682 F.3d 472, 477 (6th Cir. 2012) ("[The pretrial restraint provision] conveys Congress's intent to authorize the restraint of tainted assets prior to trial, but not the restraint of substitute assets. . . . The same analysis holds here." (emphasis, internal quotation marks, and punctuation marks omitted) (quoting *Parrett*, 530 F.3d at 431)).

The Fourth Circuit – not surprisingly in light of its decision in *Billman* – reached a different conclusion, finding that the government's interest in substitute assets vests

at the time of the commission of the underlying crime. *See United States v. McHan*, 345 F.3d 262, 272 (4th Cir. 2003). In *McHan*, true to the same rationale underlying *Billman*, the court looked towards Congress's mandate to construe the statute liberally. *Id.* at 271 (citing 21 U.S.C. § 852(o)). The court therefore reasoned, as in *Billman,* that the government's interest in substitute property vests at the time of the crime because "[t]o conclude otherwise would invite defendants who anticipate conviction . . . to undertake the obvious step of transferring their assets or removing them from the court's reach prior to indictment and conviction, thereby circumventing the important economic impact of forfeiture." *Id.*

Faced with precisely the same issue as in the present case, one district court within the Second Circuit – finding the rationale of *Gotti* controlling –  concluded that the government's interest in substitute property does not vest until the court enters an order forfeiting the substitute assets. *See Jennings*, 2007 WL 1834651, at *4 ("Applying th[e] reasoning [of *Gotti*], the relation-back principle would not apply to substitute assets because § 853(c) only refers to § 853(a) forfeited property. . . .  Based on this case law and reasoning, this Court concludes that the . . . substitute assets vested in the Government upon the order granting the motion to substitute assets.").

But Second Circuit Judge Chin, sitting in the Southern District of New York, subsequently concluded otherwise, holding that the government's interest vests at the time of indictment. *See United States v. Peterson*, 820 F. Supp. 2d 576, 585 (S.D.N.Y.

2011), *aff'd on other grounds by United States v. Crew,* 537 F. App'x 3 (2d Cir. 2013).[6]

Judge Chin simply dismissed *Gotti* because it dealt with the RICO statute, *see id.* ("[T]he

pretrial restraint of substitute assets under a RICO forfeiture statute . . is not the issue

here."), but curiously embraced the Fourth Circuit's RICO decision and rationale in

*Billman* – which *Gotti* rejected. Thus, as in *Billman,* he reasoned that "[a]llowing a

defendant, notified by an indictment that his property is subject to forfeiture, to dissipate

these assets before conviction would undermine the very purpose of the statute." *Id.*

But, with all due respect to the much-admired Judge Chin, he is a product of the Second

Circuit, not the Fourth Circuit.

## IV.

The Court presided over Mr. Espada's trial for many days and appropriately

sentenced him to five years of jail for stealing, over the course of a number of years, over

$300,000 of his not-for-profit health clinic's monies. While hardly condoning his

criminal behavior, the Court was struck by Mr. Espada's obvious love for his wife; there

was not one shred of evidence that any other woman – other than members of his family

– was the economic beneficiary of his affections. The opening lyrics to the late great

Percy Sledge's song "When A Man Loves A Woman" come readily to mind:

> When a man loves a woman

_____

[6] In its summary order in *Crew*, the Second Circuit did not reach the question
of when the government's interest in substitute property vests. *See Crew*, 537 F.
App'x at 4 (2d Cir. 2013) ("The district court focused its analysis on deciding when
the government's interest vested. We need not reach that issue . . . .").

Can't keep his mind on nothing else
He'll trade the world
For the good thing he's found.

PERCY SLEDGE, WHEN A MAN LOVES A WOMAN (Atlantic Records 1966).

The government's desire to strip Mrs. Espada of her interest in her criminal husband's pension – unrelated to his criminal misdeeds – presents a moral dilemma. On the one hand, it is certainly understandable, as Judge Chin reasoned, that the government should do everything in its power to recoup monies traceable to a convicted criminal and to preclude him from placing his assets beyond his reach. Such considerations are entirely in keeping with the punitive purpose of the forfeiture statute, though they would be less appropriate in the restitution context. *See United States v. Peters*, 732 F.3d 93, 101 (2d Cir. 2013) ("Criminal forfeiture is a form of punishment. As such, it is distinct from restitution or other remedial actions, which are intended to return the victim and the perpetrator to the status quo that existed before the violation took place."); *Pacheco*, 393 F.3d at 355 ("The purposes of the forfeiture penalty are to punish, deter and disempower criminals, aims which are not furthered by taking an innocent owner's share." (citation omitted)). On the other hand, the forfeiture of the widow's pension that Mrs. Espada may receive – not here needed for purposes of restitution – will punish an innocent person for her husband's misdeeds.[7]

Ultimately, the Court need not resolve this moral dilemma because, as the Second

---

[7] The Government does not contend that Mrs. Espada shares in her husband's culpability.

Circuit counseled in *Gotti*, "where a statute is plain on its face, the court does not resort to legislative history or to the purpose of the statute to discern its meaning." 155 F.3d at 149; *see also Floyd*, 992 F.2d at 502 ("[The] command for a liberal construction does not authorize [a court] to amend by interpretation."). The plain text of the criminal forfeiture statute requires the government to demonstrate, prior to obtaining substitute assets, that the offense property cannot be obtained "as a result of any act or omission of the defendant." 21 U.S.C. § 853(p)(1). Until the government has satisfied that burden it plainly cannot acquire an interest in substitute property.[8]

Accordingly, the government's interest in Mr. Espada's pension vested on January 23, 2014, when the Court entered a preliminary order forfeiting his pension as substitute property. Mrs. Espada's interest in the pension, which she acquired in January 2011, was therefore "vested in the petitioner rather than the defendant . . . at the time of the commission of the acts which gave rise to the forfeiture of the property . . . ." 21 U.S.C. § 853(n)(6)(A).

---

[8] It is unclear whether the government could have moved *prior to conviction* to prevent the destruction of substitute assets. Section 853(f) provides that "[t]he Government may request the issuance of a warrant authorizing the seizure of *property subject to forfeiture under this section* in the same manner as provided for a search warrant" (emphasis added). Unlike the "relation back" and pretrial restraint subsections, this provision appears to incorporate both offense *and* substitute property. It therefore seems plausible that the statute permits the pre-trial issuance of a warrant for substitute property in appropriate circumstances – for example, where the government can demonstrate prior to trial that the defendant has exhausted the proceeds of the crime but nonetheless possesses other, untainted property. The Court need not resolve this question, since in this case the government did not move to restrain the pension benefits until after Mr. Espada was convicted and sentenced.

## V.

For the foregoing reasons, the Court grants summary judgment in favor of Mrs. Espada.  An amended order of forfeiture reflecting her interest in the pension benefits will be issued.

**SO ORDERED.**

/S/ Frederick Block_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
September 2, 2015